UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
DIANA WILLIAMS,

              Plaintiff,

  -v.-

THE CITY OF NEW YORK,

              Defendant.
---------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

12- CV-06805 (RWS)

ECF CASE

**JURY TRIAL DEMANDED**

NOW COMES PLAINTIFF, Diana Williams, by her attorneys, Eisenberg & Baum, LLP and as and for her First Amended Complaint, alleges as follows:

### NATURE OF THE ACTION

1. This is an action on behalf Diana Williams, who is profoundly deaf and primarily communicates through American Sign Language. Ms. Williams was arrested on false charges by police officers employed by Defendant, The City of New York and was never provided with a sign-language interpreter at any point after being arrested, despite repeated demands for same being made by her, except for a brief period when one hospital provided an interpreter to Plaintiff for medical treatment. Plaintiff was hospitalized twice during her custody due to the extreme emotional trauma inflicted by the police officers in question. Without the benefit of an interpreter, Plaintiff had little knowledge as to why she was arrested, how long she would be in custody, and what her rights were. While under police custody, Plaintiff was forcibly medicated against her will by needle injection. Ultimately, the false charges were dropped. This Complaint states causes of action under federal, state, and city law for violations of civil rights. It also states causes of action in tort under common law.

## PARTIES

2. At all times hereinafter mentioned, Plaintiff Diana Williams has been and still is a resident of Frederick County, Maryland.

3. At all times hereinafter mentioned, Defendant City of New York was and still is a duly incorporated municipality of the State of New York, County of New York, whose seat of governance was and still is located at 250 Broadway, New York, NY, 10007.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 in that this civil rights action arises under federal law, *see* 29 U.S.C. § 794 and 42 U.S.C. §12131 et seq. The court has supplemental jurisdiction over plaintiff's state and city law claims under 28 U.S.C. §1367 and principles of pendent and/or ancillary jurisdiction.

5. This court has *in personam* jurisdiction over Defendant because it is located in, conducts operations within, transacts business in and provides services within New York City, and their principal place of activity and operations is located in the City of New York, New York County, State of New York.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1) and (b)(2) because the Defendant resides here.

## BACKGROUND

7. On Sunday, September 11, 2011, Plaintiff was arrested by officers of the New York City Police Department on the premises of a residential building she owned with her husband located at 265 Hillbrook Drive, Staten Island, New York, 10305.

8. At that time, a tenant was moving out due to non-payment of rent.

9. Plaintiff and her husband were lawfully on the premises as Plaintiff's husband

2

lived on the premises. However, based on information and belief during this process, the police were falsely called on Plaintiff in retaliation for having the tenant move out of the premises.

10. When New York City Police Officers arrived at 265 Hillbrook Drive, a New York City Police Officer approached Plaintiff and attempted to communicate with the Police officer. Plaintiff repeatedly requested an interpreter because she is Deaf, but her requests were denied. Since Plaintiff is profoundly Deaf, she was unable to effectively communicate with police without the use of a Sign Language Interpreter. Plaintiff was then falsely arrested for unknown reasons. Plaintiff was denied the opportunity to be provided reasonable accommodations and effective communication.

11. Plaintiff was then taken to a police station and was put in a cell. The cell conditions were filthy and deplorable as there were blood stains on the wall. Plaintiff was questioned without an interpreter or any other means of effective communication. Plaintiff was not informed of her rights or given any reason as to why she was being held by the Police. Plaintiff attempted to communicate by wiping dirt off the police car to form a message while she was handcuffed behind her back. Plaintiff was also laughed at and mocked by police officers as they looked at her as though she was an animal.

12. Plaintiff repeatedly informed the arresting officers that she was hearing-impaired and demanded the assistance of a sign-language interpreter. Despite these requests, the arresting officers refused to provide such assistance. No interpreter or means of effective communication were ever provided. Plaintiff was sobbing and panicking uncontrollably for hours because she did not know how long she would be there for, what her charges were, or if she would ever be able to find out. Despite these requests for a sign language interpreter, the arresting officers refused to provide such assistance.

13. No interpreter was ever provided to Plaintiff; despite the New York City police department's obligations under federal, state, and local law, as well as their settlement agreement with the United States of America to resolve claims of Deaf discrimination by the New York City Police Department.

14. As a result of the police officers ignoring her requests, Plaintiff became extremely upset and began experiencing panic attacks to the point where she felt as though she was going to die. Finally, after sobbing and panicking for hours, she was brought to the hospital.

15. At the hospital, Plaintiff briefly was provided with an interpreter by the hospital. Plaintiff indicated to the interpreter at the hospital Plaintiff needed an interpreter to communicate with the Police. The interpreter at the hospital indicated to the Plaintiff that she would let the police officers know that Plaintiff required the assistance of an interpreter to communicate with the police officers. However, the police officers refused to meaningfully communicate with the interpreter and ignored the requests of Plaintiff to provide her with an interpreter and inform her of why she was arrested and how long she would be in jail for. Plaintiff was given oral medication for her panic attacks, however, it was ineffective.

16. Plaintiff was taken back to the Police Station and thrown back in a cell. Plaintiff again began to suffer from anxiety and panic attacks and felt as though she was unable to breathe due to her inability to communicate.

17. Plaintiff was taken to the hospital for a second time. Plaintiff was not provided with an interpreter at the hospital. At the police officers' direction and against her will and without informed consent, she had blood taken from her. Also, against her will and without informed consent, she was given an injection by needle that made her pass out. Plaintiff woke up not knowing what had happened to her and was unable to walk, was nauseous, and was

disoriented. Plaintiff was then taken back to the precinct after she woke up.

18. Despite the repeated requests for an interpreter, Plaintiff still was not provided with an interpreter.

19. Plaintiff was held against her will overnight without any communication whatsoever regarding the charges against her. Although Plaintiff continued to inform the police that she was deaf and required a sign-language interpreter, police officers continued to intentionally and/or recklessly disregard her pleas and denied her the assistance of a sign language interpeter at the police precinct.

20. The police officers mocked and ridiculed Plaintiff because of her inability to hear and speak with her voice.

21. On September 12, 2011, while still in police custody, Plaintiff was released without even appearing in front of a judge or being provided with an attorney, all charges against her were dropped and she was released by police with no further explanation.

22. Despite their legal obligations, the New York City police never attempted or actually provided a sign language interpreter or even attempted to effectively communicate with Plaintiff despite her repeated requests. At no time did the Defendant communicate with Plaintiff regarding the charges brought against her.

23. As a result of Defendant's actions, Plaintiff continues to suffer from severe emotional pain and suffering, post traumatic stress, depression, along with severe anxiety attacks. Plaintiff has been catastrophically traumatized by these events and her life has been drastically and forever changed for the worse.

24. On or about December 8, 2011, Plaintiff filed a Notice of Claim with the City of New York regarding claims for false arrest, assault, denial of constitutional rights, negligent

hiring, intentional infliction of emotional distress, failure to accommodate disability (hearing impairment).

25. On March 6, 2012, pursuant to Section 50-h of the General Municipal Law, Plaintiff appeared for her hearing.

26. At said hearing, Plaintiff's request for her own sign language interpreter to be present during the hearing was unlawfully refused by Defendant's attorney on its behalf.

27. At said hearing, Plaintiff was provided an unqualified sign language interpreter by Defendant.

28. At the 50-h hearing, Plaintiff's request to voir dire the sign language interpreter for the City of New York who was present was also denied, by Defendant's attorney on its behalf.

### COUNT I
### (Denial of Constitutional Rights)

29. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "28" as if set forth more fully and at length herein.

30. Defendant acted under color of statute, ordinance, regulation, custom or usage of a State.

31. As set forth above, Defendant denied Plaintiff the right to give evidence, enforce contracts and to the full and equal protection of all laws and proceedings for the security of persons and property as is enjoyed by non-disabled citizens. Defendant's actions violate 42 U.S.C. §1983 and the laws of the State of New York.

32. Specifically, Defendant stopped Plaintiff without reasonable suspicion and arrested her without probable cause to believe she had committed a crime. Defendant used

excessive force, failed to provide adequate treatment for her medical injuries, failed to accommodate her hearing impairment and failed to afford her due process of law, intentionally charging her with spurious and/or false offenses solely for the purpose of harassment and degradation.

33. As the direct and immediate result of the foregoing conduct, Plaintiff has been caused to suffer damages involving extreme and grievous physical, emotional and psychological trauma, all to her detriment.

34. The actions described herein constitute not an isolated incident but rather part of a pattern and practice routinely followed as policy within the New York City Police Department, indicative of a custom to disregard the constitutional rights of persons who have hearing impairments.

35. The actions described herein clearly violate established statutory and constitutional norms and it was not objectively reasonable for the officers involved to have believed their conduct could have been legal.

36. The conduct of The City of New York violates their own settlement agreement with the United States of America, which directly relate to accommodating those with hearing impairments.

37. The City of New York is liable for the actions of its police officers under theories of agency and *respondeat superior*.

## COUNT II
**(Discrimination based on Disability under City, State and Federal Law)**

38. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "37" as if set forth more fully and at length herein.

39. 42 U.S.C. §12131 et seq., the Americans with Disabilities Act of 1990, The Rehabilitation Act 29 U.S.C. § 794, Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and Title 8 of the New York City Administrative Code, §8-107, prohibit discrimination by police officers against those with hearing impairments.

40. Similarly, The Rehabilitation Act pursuant to § 504 provides, "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]" 29 U.S.C. § 794.

41. Plaintiff is a profoundly deaf and primarily communicates in American Sign Language and is a qualified individual with a disability under the law.

42. Defendant is a public entity that receives federal funding and is subject to the Title II of the ADA and the Rehabilitation Act.

43. Moreover, Defendant and its officers who interacted with Plaintiff and regarded her as being disabled as they knew she was Deaf.

44. Plaintiff was entitled to the same law enforcement services that Defendant provides to other non-disabled persons.

45. Specifically, Plaintiff was entitled to the benefit of a lawful exercise of police powers, including but not limited to the right not to be subjected to an unlawful discrimination.

46. Defendants discriminated against Plaintiff solely because of her disability and failed to provide reasonable accommodation.

47. Defendant's actions were taken under circumstances giving rise to an inference of discrimination. Defendant intentionally discriminated against plaintiff and/or was deliberately

indifferent towards Plaintiff's rights.

48. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered adverse consequences. Plaintiff was caused to endure severe extreme humiliation, emotional pain and trauma, all to her detriment.

## COUNT III
### (False Arrest)

49. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "48" as if set forth more fully and at length herein.

50. Plaintiff was not guilty of any crime that could subject her to arrest, and Defendant had no reasonable basis to conclude any such crime had been committed by Plaintiff.

51. Nonetheless, Defendant caused Plaintiff to be arrested and held against her will for an extended period.

52. No charges were ever filed against Plaintiff in Court, much less was any conviction ever obtained at trial.

53. As the direct and immediate result of the foregoing conduct, Plaintiff has been caused to suffer loss of income and reputation, and extreme and grievous physical, emotional and psychological trauma, all to her detriment.

54. The City of New York is liable for the actions of its police officers under theories of agency and *respondeat superior*.

## COUNT IV
### (Assault and Battery)

55. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "54" as if set forth more fully and at length herein.

56. As described above, Defendant physically invaded Plaintiff's personal space and

menaced and threatened Plaintiff with words and gestures the intent of which was to arouse apprehension of harmful or offensive bodily contact, all for the purpose of causing Plaintiff to suffer emotional distress and to terrorize her. In fact, Plaintiff was placed in immediate fear of life and limb as a result of this conduct and suffered extreme emotional trauma as a result.

57. Accordingly, Defendant intentionally placed Plaintiff in apprehension of an imminent, offensive and/or harmful touching.

58. Defendant's threats were independent of any physical contact.

59. As described above, Defendants subjected Plaintiff to unwanted physical touching.

60. As a direct and immediate result of this touching, Plaintiff was caused to suffer serious bodily trauma and became emotionally upset, all to her detriment.

61. Defendant's acts were committed with a conscious and deliberate disregard of the interest of others such that their conduct may be called willful or wanton.

62. The City of New York is liable for the actions of its police officers under theories of agency and *respondeat superior*.

## COUNT V
### (Intentional Infliction of Emotional Distress)

63. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "62" as if set forth more fully and at length herein.

64. The acts herein complained of constitute extreme and outrageous conduct undertaken with an intent to cause, or with a reckless disregard of the substantial probability of causing, severe emotional distress to Plaintiff, and these acts did in fact cause severe emotional distress to Plaintiff.

65. Specifically, Defendant's employees and agents, during the course of their duties, embarked upon course of conduct including authorizing gross abuse of police authority designed to cause emotional and psychological stress to Plaintiff for no other purpose than to inflict such suffering.

66. Defendants' actions, being taken in the context of the official authority of the police and being directed against a helpless victim already were so outrageous as to exceed the bounds tolerated by society.

67. The City of New York is liable for the actions of its police officers under theories of agency and *respondeat superior.*

## COUNT VI
### (Negligent Hiring and Supervision of Employees)

68. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "67" as if set forth more fully and at length herein.

69. The City of New York knew or should have known that the police officers who dealt with Plaintiff as described herein had the propensity to expose persons like Plaintiff to the harms described herein, yet the City of New York still retained these officers and thereby enabled them to take such actions

70. Moreover, the City of New York could have prevented the injuries sustained by Plaintiff if it had not negligently failed to supervise and train the police officers who dealt with Plaintiff so as to prevent their harmful and injurious behavior.

## COUNT VII
### (Injunction)

71. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs numbered "1" through "70" as if set forth more fully and at length herein

72. Money damages are insufficient to fully address the claims set forth herein, and irreparable injury will result unless Plaintiff is granted a permanent injunction requiring the New York City Police Department to provide sign-language interpreters to hearing-impaired persons who are arrested and incarcerated.

WHEREFORE, Plaintiffs demand judgment as follows:

i. On the First Cause of Action a judgment against Defendant and an award of compensatory damages for emotional distress, punitive and/or exemplary damages, attorneys' fees and costs, pre and post-judgment interest, in an amount to be determined at trial in excess of the jurisdictional limits of the Court, and further relief as this Honorable Court deems just, equitable and proper;

ii. On the Second Cause of Action a judgment against Defendant and an award of compensatory damages for emotional distress, discrimination, punitive and/or exemplary damages, attorneys' fees and costs, pre and post-judgment interest, in an amount to be determined at trial in excess of the jurisdictional limits of the Court, and further relief as this Honorable Court deems just, equitable and proper;

iii. On the Third Cause of Action a judgment against Defendant and an award of compensatory damages for emotional distress, punitive and/or exemplary damages, attorneys' fees and costs, pre and post-judgment interest, in an amount to be determined at trial in excess of the jurisdictional limits of the Court, and further relief as this Honorable Court deems just, equitable and proper;

iv. On the Fourth Cause of Action a judgment against Defendant and an award of compensatory damages for emotional distress, punitive and/or exemplary damages, attorneys' fees and costs, pre and post-judgment interest, in an amount

v.     to be determined at trial in excess of the jurisdictional limits of the Court, and further relief as this Honorable Court deems just, equitable and proper.

v. On the Fifth Cause of Action a judgment against Defendant and an award of compensatory damages for emotional distress, punitive and/or exemplary damages, attorneys' fees and costs, pre and post-judgment interest, in an amount to be determined at trial in excess of the jurisdictional limits of the Court, and further relief as this Honorable Court deems just, equitable and proper.

vi. On the Six Cause of Action a judgment against Defendant and an award of compensatory damages for emotional distress, punitive and/or exemplary damages, attorneys' fees and costs, pre and post-judgment interest, in an amount to be determined at trial in excess of the jurisdictional limits of the Court, and further relief as this Honorable Court deems just, equitable and proper.

vii. On the Seventh Cause of Action a judgment against Defendant and a permanent injunction requiring the New York City Police Department to have proper training, policies, and procedures in place and provide reasonable accommodations such as sign-language interpreters to all hearing-impaired persons upon arrest and incarceration, and further relief as this Honorable Court deems just, equitable and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated:  February 5, 2014
        New York, New York

                                      Respectfully submitted,

                                      EISENBERG & BAUM, LLP

                       By: _____
                                 Erić M. Baum, Esq. (EB-5493)
                                 ebaum@EandBlaw.com

                                 _____
                                 Andrew Rozynski, Esq. (AR-3228)
                                 arozynski@EandBlaw.com

                                 Attorneys for Plaintiff
                                 Office and Post Office Address
                                 24 Union Square East, Fourth Floor
                                 New York, NY 10003
                                 (212) 353-8700