EISENBERG & BAUM LLP
Eric M. Baum, Esq.
Andrew Rozynski, Esq.
24 UNION SQUARE EAST, 4TH FLOOR
NEW YORK, NEW YORK 10003
(212) 353-8700
ATTORNEYS FOR THE PLAINTIFF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                 :

DIANA WILLIAMS,                  :
                                               : Docket No. 12-CV-6805 (VEC)
               Plaintiff,    :

   -v.-                                   :

THE CITY OF NEW YORK.,    :

               Defendant.   :
------------------------------------------------------------X

**MEMORANDUM OF LAW ON BEHALF OF PLAINTIFF DIANA WILLIAMS
IN OPPOSITION TO DEFENDANT'S CORRECTED MOTION
TO DISMISS PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

Page No.

I. TABLE OF AUTHORITIES……………………………………………..………..ii

II. PRELIMINARY STATEMENT………………………………………………….1

III. ARGUMENT………………………………………………………………....….2

    A. LEGAL STANDARD……………………………………………………....2

    B. PLAINTIFF SUFFICIENTLY STATES A CLAIM FOR INJUNCTIVE RELIEF…………………………………………………………………………4

    C. THE CITY HAS NOT ELIMINATED THE LIKELIHOOD THAT PLAINTIFF WILL NOT BE DISCRIMINATED AGAINST BASED ON HER DEAFNESS……………………………………………………………….7

    D. THE CASE LAW CITED BY DEFENDANT IS EASILY DISTINGUISHABLE……………………………………………………..8

    E. PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND SHOULD THE CURRENT PLEADINGS BE FOUND TO BE DEFICIENT FOR INJUNCTIVE RELIEF………………………………………………………..12

IV. CONCLUSION………………………………………………………………..14

# TABLE OF AUTHORITIES

**Cases**

*Baur v. Veneman*,
    352 F.3d 625, 631 (2d Cir.2003)……………………………………………………………..2

*Bldg. and Constr. Trades Council of Buffalo, New York and Vicinity v. Downtown Dev., Inc.*,
    448 F.3d 279*279 138, 144 (2d Cir.2006)……………………………………………….....3

*Burkina Wear, Inc. v. Campagnolo*,
    S.R.L., No. 07-CV-3610, 2008 WL 1007634, *3 (S.D.N.Y. Apr. 9, 2008)………………3

*Camarillo v. Carrols Corp.*,
    518 F.3d 153, 158 (2d Cir. 2008)……………………………………………………….4

*Chapman v. YMCA of Greater Buffalo*,
    161 F.R.D. 21, 24 (W.D.N.Y. 1995)……………………………………………………..12

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)……………………………………………………………..8,9,10,11

*Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998)……………………………………………3

*Curry v. City of New York*,
    2010 U.S. Dist. LEXIS 135461 (E.D.N.Y. 2010)………………………………..……11

*Etuk v. Slattery*,
    936 F.2d 1433, 1443 (2d. Cir.1991)…………………………………………………….4

*Foman v. Davis*,
    371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)……………………………………12

*Henrietta D. v. Bloomberg*,
    331 F.3d 261, 290 (2nd Cir. 2003)……………………………………………………….4

*Hernandez v. Coughlin,*
    18 F.3d 133, 136 (2d Cir. 1994)………………………………………………………...2

*Kapps v. Wing*,
    404 F.3d. 105, 122-23 (2nd Cir. 2005)…………………………………………………..7

*Ligon v. City of New York*,
    925 F. Supp. 2d 478 (S.D.N.Y. 2013)…………………………………………………...7

*MacIsaac v. Town of Poughkeepsie,*
 770 F. Supp. 2d 587 (S.D.N.Y. 2011)……………………………………………..10,11

*Miller v. Wolpoff & Abramson, L.L.P.,*
 321 F.3d 292, 300 (2d Cir. 2003)……………………………………………………2

*Monahan v. New York City Dep't of Corr.,*
 214 F.3d 275, 283 (2d Cir. 2000), *cert. denied*, 531 U.S. 1035,
 121 S. Ct. 623, 148 L. Ed. 2d 533 (2000)…………………………………….…..12

*Pickern v. Holiday Quality Foods Inc.,*
 293 F.3d 1133, 1137-38 (9th Cir. 2002)……….....……………………………….4

*Powell v. Nat. Bd. of Med. Examiners,*
 364 F.3d 79, 86 (2004)………………………………………………………………3

*Ring v. Spina,*
 148 F.2d 647, 653 (2d Cir. 1945)…………………………………………………..3

*Scheuer v. Rhodes,*
 416 U.S. 232, 236 (1974)……………………………………………………………3

*Shain v. Ellison,*
 356 F. 3d 211 (2d Cir. 2004)………………………………………………………11

*United States v. Carson,*
 52 F.3d 1173, 1184 (2d Cir.1995)………………………………………………….4

**Federal Regulations and Statutes**
Fed. R. Civ. P. 8………………………………………………………………….....2

Fed. R. Civ. P. 8(a)(3)……………………………………………………………...3

Fed. R. Civ. P. 15(a)(2)…………………………………………………………...12

Fed. R. Civ. P. 54(c)………………………………………………………………..3

42 U.S.C. § 12101(b)(1)…………………………………………………………...7

**New York Statutes**
N.Y. Exec. Law § 290 *et seq*……………………………………………………13

Title 8 of the New York City Administrative Code, §8-107……………………………13

## II.  PRELIMINARY STATEMENT

On February 5, 2014, Plaintiff Diana Williams filed her First Amended Complaint alleging, among many other things, discrimination on the basis of her disability of deafness as she was repeatedly denied and refused reasonable accommodations to ensure effective communication during her interactions with police officers employed by Defendant. The City of New York, otherwise referred to as ("City") or ("Defendant"), refused to provide a sign language interpreter while Plaintiff was under its custody despite its obligations under Federal, State, and Local law as well as its contractual obligations with the United States of America as a result of a settlement relating to a major Deaf discrimination lawsuit in 2009. On May 29, 2014, Defendant moved for a partial Judgment on the Pleadings ("Motion"). (DE 26).

In its Motion, the City requests dismissal of the injunctive relief claims on the basis that Plaintiff lacks standing (DE 26 Pg 3). To support the Motion, the City contends that the Amended Complaint fails to meet the requirements for granting injunctive relief because it does not sufficiently allege a likelihood of future harm (DE 26 Pg 2 ¶2, Pg 5¶3). The City further argues that because the arrest has been concluded and because Plaintiff lives in Maryland and not New York, she does not have standing to seek claims for injunctive relief.  However, as shown below, Plaintiff in fact has sufficient contacts and ties with New York City which would lead the reasonable fact finder to believe that it is reasonable to infer that Plaintiff will visit New York City again and subject herself to the jurisdiction of the New York City Police Department, as she has done regularly in the past, and that in doing so she will face an unreasonable risk of repeated violations of her basic civil rights.[1]

---

[1] Plaintiff expects to be able to prove at trial, for instance, that several years ago the City signed a consent agreement with the United States of America promising to provide sign-language interpreters to

1

The City's position that Plaintiff fails at the pleading stages is misguided as the law the City relies upon in its motion is either distinguishable or inapplicable. Plaintiff has standing to sue for injunctive relief because 1) Plaintiff sufficiently alleged a past injury; 2) it is reasonable to infer the discriminatory treatment in failing to effectively communicate with the deaf will continue; and 3) it is reasonable to infer that Plaintiff will return to the subject location based on her allegations that she owns a home in the City which is currently a rental property she is obligated to maintain and that her husband lived at that home. In addition, plaintiff will be able to prove at trial that she regularly visits her family whom resides in the City of New York.

For the foregoing reasons and the argument presented below, the Plaintiff respectfully requests that this Court deny Defendant's Motion in its entirety.

### III. ARGUMENT

#### A. LEGAL STANDARD

The Federal Rules of Civil Procedure impose a standard of "notice pleading" and require only that a complaint set out a "short and plain statement of the claim showing that the pleader is entitled to relief." *see* Fed. R. Civ. P. 8. Motions to dismiss address the sufficiency of the complaint, not the sufficiency of evidence, and a court deciding a motion to dismiss must accept all allegations in the complaint as true and draw all inferences in favor of the non-moving party. *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir. 2003). This standard is applied with even greater force in favor of the pleader where, as here, the plaintiff alleges civil rights violations. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994).

At the pleadings stage, "standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d

---

arrestees and that its failure to do so in Plaintiff's case violated that agreement and did so because of a systematic, ongoing failure to abide by it.

Cir.2003). When standing is challenged on the basis of the pleadings, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Bldg. and Constr. Trades Council of Buffalo, New York and Vicinity v. Downtown Dev., Inc.*, 448 F.3d 279*279 138, 144 (2d Cir.2006) (internal quotation omitted). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998). "The issue is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

Though Federal Rule of Civil Procedure 8(a)(3) requires that a complaint include "a demand for the relief sought, which may include relief in the alternative or different types of relief," the failure of Plaintiff to include a demand for plausible judicial relief against each Defendant is not fatal to his claims at this early stage in the proceeding. See FED. R. CIV. P. 54(c)("[F]inal judgment should grant the relief to which each party is entitled even if the party has not demanded that relief in its pleadings."); *see also Powell v. Nat. Bd. of Med. Examiners*, 364 F.3d 79, 86 (2004), ("Under Rule 54(c) of the Federal Rules of Civil Procedure, a court can grant any relief to which a prevailing party is entitled, whether or not that relief was expressly sought in the complaint.") (citations omitted); opinion corrected on other grounds, *Powell v. NBME* 364 F.3d 79 (2d Cir. 2004); *Burkina Wear, Inc. v. Campagnolo*, S.R.L., No. 07-CV-3610, 2008 WL 1007634, *3 (S.D.N.Y. Apr. 9, 2008) ("[T]he availability of the specific relief requested pursuant to any count in the Complaint is not relevant to the question of whether [plaintiff] has stated a claim." (citing *Ring v. Spina*, 148 F.2d 647, 653 (2d Cir. 1945)) ("[P]laintiff is entitled to . . . rely on the court to award him such judgment as his case deserves;

3

and at trial he will not be bound by his prayers [for relief].")). Here, Plaintiff has sufficiently alleged facts to support her claim for injunctive relief.

**B.     PLAINTIFF SUFFICIENTLY STATES A CLAIM FOR INJUNCTIVE RELIEF**

The City is mistaken when it claims that Plaintiff has not stated a cause of action for injunctive relief. Contrary to its assertions, Plaintiff sufficiently states a cause of action and, thus, has standing to seek injunctive relief against the City.

To state a cause of action for injunctive relief, a Plaintiff must (1) allege a past injury under the ADA (2) show that it was reasonable to infer that the discriminatory treatment would continue; and (3) show it is reasonable to infer that the Plaintiff plausibly intends to return to the place of discrimination, *See Camarillo v. Carrols Corp.,* 518 F.3d 153, 158 (2d Cir. 2008) (citing *Pickern v. Holiday Quality Foods Inc.,* 293 F.3d 1133, 1137-38 (9th Cir. 2002).

The district courts have broad discretion in deciding whether to award injunctive relief. *Kapps v. Wing*, 404 F.3d. 105, 122-23 (2nd Cir. 2005); *see also, Etuk v. Slattery*, 936 F.2d 1433, 1443 (2d. Cir.1991). In particular, where a history of legal violations is before the district court, that court has significant discretion to conclude that future violations of the same kind are likely. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 290 (2nd Cir. 2003). "Courts are free to assume that past misconduct is highly suggestive of the likelihood of future violations." *United States v. Carson*, 52 F.3d 1173, 1184 (2d Cir.1995) (internal quotation marks omitted).

Here, Plaintiff meets the requirements for stating a claim for injunctive relief. First, Plaintiff sufficiently alleges a past injury under the ADA and Rehabilitation Act. In the Amended Complaint, Plaintiff sufficiently alleges that she is a deaf person who was wrongfully arrested by the City and discriminated against based on her deafness. Prior to and after her arrest, the City violated her rights under the law when the City:

a. Failed to maintain policies and procedures to ensure compliance with Title II of the Americans with Disabilities Act, policies that specifically provide access and communications to individuals with disabilities;

   b. Failed to ensure that communications with the Plaintiff was effective as communications with non-disabled persons;

   c. Failed to provide auxiliary aids and services, including a qualified interpreter and modify policies and procedures to prevent discrimination against Plaintiff and other persons with hearing disabilities with respect to the City's services including the City's law enforcement services;

   d. Denied the Plaintiff access and benefits to the City's services including law enforcement solely based on Plaintiff's disability as a deaf person;

   e. Failed to implement the above as required by its contractual obligations entered into with the United States of America;

Based on the foregoing, Plaintiff has met the requirement to show a past injury.

Second, Plaintiffs sufficiently allege facts in the Amended Complaint to infer that the above discriminatory treatment will continue. Defendant has asserted no evidence that the discriminatory treatment has stopped, in fact there is reason to believe that the discriminatory treatment is still continuing based on the depositions and discovery that has already been conducted in this case. Plaintiff experienced discriminatory treatment from the New York City Police Department, despite its legal obligations under Federal, State, and Local law, and contractual obligation set forth by settlement agreement with the United States of America to promulgate appropriate non-discriminatory policies and provide reasonable accommodations to Deaf persons. Based on the foregoing, Plaintiff has met her requirement, at the very least, at the pleading stage, to show the discriminatory treatment by the City of New York will continue.

Lastly, Plaintiff sufficiently alleges that she plausibly intends to return to the City. In the Amended Complaint, the Plaintiff alleges ongoing ties to the City through family and through her ownership of real estate in the City. Plaintiff and her Husband own a home at 265 Hillbrook

5

Drive in Staten Island, NY. As alleged in the Complaint, her Husband lived at 265 Hillbrook Drive in Staten Island where they leased a portion of their house to a Tenant. While Plaintiff resides in Maryland, she does not allege that she will not return to the City and no such inference can be drawn from the Amended Complaint. To the extent her allegations are unclear as to whether the Plaintiff will continue to return to the City, Plaintiff further clarifies her intention to return to the City: Plaintiff's parents live in Bronx County and she visits her parents in New York City on a regular basis and has done so since she moved to Maryland and will continue to do so. Plaintiff and her Husband have spent many years in New York City, and have substantial ties to the City and do not intend to sever their ties with their friends or family based in New York City. Plaintiff also owns and maintains property in New York City. Based on the foregoing, Plaintiff has met the requirement that she plausibly intends to return to the City.

Plaintiff, while in New York City, is entitled to and will continue to need the services of the New York City Police Department for an unlimited number of reasons, which could be in her control and out of her control. For example, Plaintiff could be the victim of a crime, accident, traffic stop, or encounter an emergency in which she required the assistance of a police officer. The possibilities of interacting with the New York City police and needing reasonable accommodations to ensure effective communication are endless. Plaintiff can also reasonably expect to need to call upon New York City police officers to respond to an emergency situation at her property. As such, it is reasonable to infer that Plaintiff will need the services of the New York City Police Department in the future and will require effective communication.

It is also reasonable likely based on the evidence gathered in the case thus far that Plaintiff would likely be denied the services of sign language interpreters for effective communication, despite the City's legal obligations. Therefore, Plaintiff would have standing in

this case. Once Plaintiff has established standing for injunctive relief at the pleading stage to deny her claim would undermine the ADA's remedial purpose and impede Congress's intent that the ADA serve as a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals. 42 U.S.C. § 12101(b)(1).

**C.    THE CITY HAS NOT ELIMINATED THE LIKELIHOOD THAT PLAINTIFF WILL NOT BE DISCRIMINATED AGAINST BASED ON HER DEAFNESS**

A widespread, systematic abuse of basic civil rights by police officers is grounds for an injunction, even a preliminary injunction, before the plaintiff has proved his case. *Ligon v. City of New York*, 925 F. Supp. 2d 478 (S.D.N.Y. 2013). Where the Defendant has not eliminated the likelihood of harm, awarding injunctive relief is appropriate. *Kapps v. Wing*, 404 F.3d. 105, 123 (2nd Cir. 2005).

Here, the City has not eliminated its widespread, systematic abuse of basic civil rights by the City's police department against the Deaf. The City's Answer and Affirmative Defense are devoid of any factual allegations reflecting the City's efforts to remedy its violations of the ADA and Rehabilitation Act including allegations that the City implemented, maintained and ensured effective communication and auxiliary aids accommodations for deaf persons including Plaintiff. So the City is incorrect when it claims that the harm is "indisputably concluded" and that Plaintiff must show likelihood of arrest. Defendant fails to note that communication with New York City police officers does not mean that Plaintiff must get arrested again to need to communicate with the New York City police officers. As discussed above, people can utilize the police for peaceful/protection reasons, emergency reasons, and other non-criminal reasons. One need not have to prove that Plaintiff will be arrested again to need to communicate with the police. Contrary to the City's assertions, Plaintiff is seeking remedial relief under the ADA,

Rehabilitation Act to ensure that she will not be discriminated in the access, use or benefits of the City's services including their law enforcement services.

**D.     THE CASELAW CITED BY DEFENDANT IS EASILY DISTINGUISHABLE**

The case law Defendant's Motion relies on for dismissal is inapplicable and easily distinguished. Defendant cites a small group of cases, which it claims support dismissing Plaintiff's claim for injunctive relief. However, the cases Defendant cites deal with judgment on the merits, not dismissal on the pleadings, and mostly involve aberrational allegations of police brutality rather than systematic administrative practice, and none involve an issue that the defendant had made a formal legal undertaking to correct. As such, it is clear that Defendant actually does not have any apposite legal authority to support its motion.

In support of its motion, Defendant principally and heavily relies upon the U.S. Supreme Court's 5-4 ruling in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), arguing that it has similar facts to this matter and supports dismissal of the request made her for injunctive relief. Defendant's reliance upon this decision is severely misplaced. In *Lyons*, the court held that the "capable of repetition" doctrine that saves a claim from being moot and the "redressability" element of an injunction require a plaintiff to "make a reasonable showing that he will again be subjected to the alleged illegality." *Id.*, at 109. The plaintiff in *Lyons* had been placed in a chokehold following a stop for a traffic offense. The court held that the plaintiff had not shown he was likely to be again subjected to a chokehold since there was no evidence that the police routinely resorted to chokeholds when dealing with persons stopped for traffic offenses. *Id.* at 108.

There are enormous differences between *Lyons* and the instant matter. First, the plaintiff in *Lyons* sought a preliminary injunction, something that is not at issue here and something

which has much more stringent requirements than an injunction following trial. Second, providing a sign-language interpreter is an administrative act by the City, not a life-threatening act of aggression like a chokehold, and therefore it is far more likely to be repeated due to simple administrative practice. A chokehold is inconsistent with the basic nature of a traffic stop, where penalties are minimal, an ordinary person would not take action to provoke a chokehold and an ordinary officer would not seek to impose it. A sign-language interpreter, however, is a routine part of dealing with a deaf person to ensure that the deaf person receives effective communication.

In *Lyons*, the plaintiff was asking the court to help him avoid being physically attacked by the police, a harmful, aberrational act that the plaintiff was asking the court was likely to recur; here, Ms. Williams is asking the court to guarantee that the police will carry out a legally required act of effective communication for deaf persons when their current procedures clearly indicate they will not do so. Second, the defendant in *Lyons* had never agreed prior to the incident to avoid using chokeholds under the circumstances alleged, and to the contrary immediately after they occurred had imposed a six-month moratorium on the use of chokeholds. The exact opposite situation obtains here: the evidence at trial will show that defendant in this case signed a formal agreement with the U.S. government in 2009 to assure that it would provide sign-language interpreters under the circumstances of the instant matter, and then it failed to implement its obligations under that agreement. While Plaintiff is not a party to the agreement she is an intended beneficiary of the agreement. This failure by Defendant clearly demonstrates that the agreement was not sufficient to prevent the misconduct and that an injunction is the only way to protect Plaintiff from further abuse. The fact that even with the force of the United States of America compelling it to do otherwise New York City continues to not follow its obligations

under the civil rights law shows that of its refusal to provide sign language interpreters is not an isolated incident, as the court in *Lyons* viewed the chokehold to be, but rather one that it is bound to happen again, meaning that an injunction is necessary in this matter.

Defendant is simply mistaken in suggesting that only the possibility that Ms. Williams will be arrested again is relevant to determining redressabilty. The Court should also consider the likelihood that she will need to request the intervention of the police on her behalf, for example in connection with her rental property. The ADA, the Rehabilitation Act and the Agreement between the United States of America and the City of New York all required that Defendant provide a qualified sign-language interpreter or other reasonable accommodations to deaf persons in whenever they interact, not just in the context of an arrest. Plaintiff owns rental property in New York. It is reasonably foreseeable that plaintiff could have a peaceful or an emergency encounter with police. Issues could arise with tenants or family members requiring immediate response by the police. In addition it will be proven at trial that Plaintiff has a driver's license, and she has relatives with whom she visits regularly.

Moreover, the Court should consider not only the likelihood that there will be further encounters with the police, but also the chilling effect of not guaranteeing interpreter availability upon Plaintiff's ability to contact the police with confidence that she will be able to effectively communicate with them. If Plaintiff believes she will be unable to effectively communicate with the Police she will be discouraged from contacting the police, a dangerous contingency that is contrary to public policy.

Defendant also cites three other decisions which it contends support its motion. First is *MacIsaac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587 (S.D.N.Y. 2011), which like *Lyons* involves allegations of excessive force, aberrational behavior, but unlike *Lyons* does involve the

procedural context of the present motion. In *MacIsaac* efforts to dismiss a claim for injunctive relief followed trial. In essence, the plaintiffs in both *Lyons* and *MacIsaac* asked the reviewing court to conclude that routine utilization of excessive force was to be expected from the police, and therefore needed to be enjoined. The courts were understandably reluctant to make such a ruling. But no such allegations are at issue in this case. To the contrary, it involves only the implementation of an administrative practice of summoning a sign-language interpreter and providing other reasonable accommodations to facilitate effective communication with a deaf person. It is worth emphasizing that the police officers in this case not only refused to provide a qualified interpreter and provide other reasonable accommodations at the scene, but they likewise refused to do so later on at the jail, when doing so would have been a far simpler matter. These facts clearly show a consistent practice of denying sign language interpreters and other reasonable accommodations to deaf persons and a strongly likelihood that it will occur again in the future.

Defendant also cites *Curry v. City of New York*, 2010 U.S. Dist. LEXIS 135461 (E.D.N.Y. 2010). There, the police issued a summons to a street vendor, who acting *pro se* sought an preliminary injunction on the allegation that this conduct violated his First Amendment rights. The court held that since the pleading did not allege any prior action such as arrest or confiscation of wares that might be repeated, and since there was no apparent basis for a First Amendment claim set out in the pleading, no preliminary injunction could be granted. Thus *Curry* has absolutely no similarity to the instant matter at all.

Finally, Defendant cites *Shain v. Ellison*, 356 F. 3d 211 (2d Cir. 2004). There, the plaintiff challenged a "county's blanket policy of strip searching all jail admittees." Not only did the plaintiff's request for injunctive relief go to trial in *Shain*, it was remanded by the Second

Circuit for further trial proceedings on the justification of an injunction before the court made its ruling in regard to that issue. The court held that it was aberrational for the plaintiff to have been relegated to jail after his misdemeanor arrest "as almost all misdemeanor arrestees are released on their own recognizance or on bail." The court stated:

> Under *Lyons*, to establish a sufficient likelihood of a future unconstitutional strip search, Shain would have to show that *if* he is arrested in Nassau County and *if* the arrest is for a misdemeanor and *if* he is not released on bail and *if* he is remanded to NCCC and *if* there is no particularized reasonable suspicion that he is concealing contraband, he will again be strip searched. Such an accumulation of inferences is simply too speculative and conjectural to supply a predicate for prospective injunctive relief. [emphasis original]

There is no such "accumulation of inferences" at issue in this case. Based on the conduct of the New York City Police department and the discovery already conducted thus far in this case, there is little likelihood that Ms. Williams will be provided with a sign language interpreter or other reasonable accommodations for effective communication in any context in which she may be required to deal with the New York City Police Department.

**E.    PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND SHOULD THE CURRENT PLEADINGS BE FOUND TO BE DEFICIENT FOR INJUNCTIVE RELIEF**

To the extent any deficiency exists in Plaintiff's current pleading in regard to factual allegations in support of injunctive relief, Plaintiff requests leave to amend her complaint in order to insert such allegations.

A party may amend a pleading by leave of the court at any time. Fed. R. Civ. P. 15(a)(2). The Rule provides that "[t]he court should freely give leave when justice so requires," *id.*, and courts have liberally construed this directive. *See, e.g., Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *see also Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000), *cert. denied*, 531 U.S. 1035, 121 S. Ct. 623, 148 L. Ed. 2d 533

(2000); *Chapman v. YMCA of Greater Buffalo*, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (noting that "[t]he stated purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim"). The decision to grant a party's motion to file an amended pleading lies within the trial court's discretion and it may consider such factors as undue delay, bad faith, undue prejudice to the opposing party, and whether the amendment is unlikely to be productive in deciding whether to exercise its discretion.

Defendants will not suffer any undue prejudice from amendment. They chose to delay the filing of their motion until this point in the litigation, whereas they could have chosen to respond to service of the complaint by asserting it. Under the liberal "notice pleading" rules applicable in federal court they were fully apprised of Plaintiff's claims regarding an ongoing practice of discriminatory misconduct, which require injunctive relief to address in an ongoing manner, and had a full opportunity to explore the basis of such claims when deposing Plaintiff. The statute of limitations has not expired on Plaintiff's claims for discrimination pursuant to the ADA, Rehab Act, N.Y. Exec. Law § 290 *et seq*. and Title 8 of the New York City Administrative Code, §8-107.

There has been no undue delay. Under the liberal "notice pleading" standards followed by federal courts, Plaintiff had no reason to suspect that Defendant claimed any deficiency in the pleading until it filed its motion for judgment on the pleadings. If any delay was cause here, it was caused by Defendant in failing to raise any issue regarding the pleading until discovery was well underway.

Likewise, there has certainly been no bad faith, and Defendant alleges none, nor could it.

Finally, the proposed amendment is likely to be productive. To the extent "notice pleading" standards are not satisfied by the original complaint regarding the request for

injunctive relief, the amended pleading can provide extensive details regarding the factual basis upon which Plaintiff will seek injunctive relief in the event she prevails at trial.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's claims for injunctive relief should be denied with prejudice.

Respectfully Submitted,

Dated: June 12, 2014               EISENBERG & BAUM, LLP


 By:   /s/ Andrew Rozynski
Andrew Rozynski, Esq. (AR-3228)
Attorneys for Plaintiff
24 Union Square East, Fourth Floor
New York, NY  10003
(212) 353-8700

By:   /s/ Eric M. Baum
Eric M. Baum, Esq. (EB-5493)
Attorneys for Plaintiff
24 Union Square East, Fourth Floor
New York, NY  10003
(212) 353-8700