EALUWILC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------------x

3  DIANA WILLIAMS,

4              Plaintiff,

5        v.                          12 CV 6805(VEC)

6  THE CITY OF NEW YORK,

7              Defendant.

8  ------------------------------------x
                                    New York, N.Y.
9                                   October 21, 2014
                                    3:00 p.m.
10
   Before:
11
                    HON. VALERIE E. CAPRONI
12
                                    District Judge
13
                         APPEARANCES
14
   EISENBERG & BAUM
15      Attorneys for Plaintiff
   BY:  ANDREW ROZYNSKI
16

17  NEW YORK CITY LAW DEPARTMENT
   OFFICE OF CORPORATION COUNSEL
18      MARK D. ZUCKERMAN
        Assistant Corporation Counsel
19

20

21

22

23

24

25

1    (Case called)

2    THE COURT:  Mr. Rozynski?

3    MR ROZYNSKI:  Yes, your Honor.

4    THE COURT:  Mr. Zuckerman?

5    MR. ZUCKERMAN:  Yes, your Honor.

6    THE COURT:  Things seem to have degenerated here.

7    MR ROZYNSKI:  A little bit.

8    THE COURT:  Mr. Rozynski.

9    MR ROZYNSKI:  Plaintiff has read the letter.

10   Plaintiff had served discovery request for documents on October

11   11, 2013 and defendant responded on December 17, 2013.  In that

12   response, document request number 41, defendant said that they

13   would review and supplement, along with other objections as

14   stated in the letter.

15       Discovery was coming to a close.  We went to a

16   conference with magistrate and he said, had Mr. Zuckerman

17   produced these other complaints to you.  I said, defendant had

18   told me that they would supplement but I had not received any

19   as of yet, I would follow up with defendant.

20       I conferenced with defendant.  Defendant said that it

21   was untimely.  And as you are aware, under Rule 26(e), if they

22   were to change that response, that they had an obligation to

23   let me know that they were not going to supplement, the search

24   warrant, supplement that information.  They never did.

25       I, at that point, had met and conferred with Mr.

EALUWILC

1    Zuckerman.  Mr. Zuckerman told me that he would not produce,

2    that it was untimely.  So we moved through letter.

3         On the second note, there are photographs, color

4    photographs that would have depicted injuries between the

5    plaintiff and the co-arrestee and they were produced late in

6    discovery and in black-and-white.  We requested the color

7    photographs of these black-and-white photos as they would more

8    accurately depict the injuries that were or were not there.

9         I had asked counsel to produce this.  Counsel said

10   that it's been long destroyed pursuant to statute and that if I

11   wanted to prevent that destruction, that it was my affirmative

12   obligation to tell him not to destruct it.  I disagreed and I

13   said that he had an obligation to put a litigation hold once he

14   reasonably knew that a lawsuit would commence, the notice of

15   claim period.

16        I asked him facts and circumstances surrounding the

17   destruction.  I did not receive any detailed response

18   surrounding the destruction, so I don't know if a spoliation

19   motion would be appropriate in this case because I don't have

20   enough evidence to know when it was destroyed and what time and

21   if defendant's counsel at the time implemented a litigation

22   hold at the time on notice.

23        These are the two major disputes right now.

24        There are other things in terms of housekeeping that

25   they we would like to discuss, however, I can save that later

1    or we can talk about it now.

2              THE COURT:  Mr. Zuckerman.

3              MR. ZUCKERMAN:  Sure.  With respect to the other

4    complaints, when I became involved in the complaint in

5    approximately May of this year, the first thing that I did was

6    try to take stock of what discovery Mr. Rozynski had

7    outstanding.  There were 52 document requests.  There were a

8    whole bunch of interrogatories, so I took it upon myself to

9    initiate and meet and confer with Mr. Rozynski.  It was my

10   idea.  I went to Mr. Rozynski's office.  We talked for a while.

11   And what came out of that meeting was that he was going to put

12   in a letter to me what discovery that believed was still

13   outstanding that he wanted.  This is the letter.  It is May 30

14   of 2014.  It lists a whole bunch of document requests and

15   interrogatories that Mr. Rozynski still wanted.  Missing from

16   the letter is anything about discovery request number 41 of the

17   complaint.  So I didn't think that that issue was still on the

18   table.  There were 52 document requests.  I was doing my best

19   to respond to his many demands.  I produced thereafter 4200

20   pages of documents, of policy documents, training documents,

21   documents relating to this case, training videos.  I did

22   everything.

23             What happened was, I heard nothing from Mr. Rozynski

24   about other complaints for months on end.  All of a sudden we

25   go to a settlement conference -- and Judge Francis didn't say,

did Mr. Zuckerman provide you complaint materials.  He looked

at Mr. Rozynski, he said, do you have any evidence of other

complaints because that might be necessary for a Monell claim,

and that's when Mr. Rozynski said that Mr. Zuckerman has not

supplemented.

I took a look at the request.  To this day, I don't

know exactly what type of other requests he is looking for.

When I read the document request, I thought it dealt with other

civil complaints that would be a public record.

But beyond that, my concern was, we are less than a

week before the end of discovery and for me to start doing new

searches for other complaints, inevitably, the cycle would be,

if we find any, we would provide it to Mr. Rozynski, he would

then add it to his witness list.

I would need to counter that by finding witnesses for

the City on those specific incidents.  And then we would be at

the end of discovery and we couldn't depose all of these people

and I don't know where they would fit in the case.  So that's

what happened with respect to the so-called other complaints.

With respect to the photographs, there are basically

three different sets of photographs, if you will, at issue.

The first one is on the prisoner movements list that I

described in the letter to your Honor.

CPL 160.50 requires that upon an arrest being sealed,

that we either destroy it or we provide the original to the

1    plaintiff. That is at our discretion. Pursuant to our

2    practice, those photographs were destroyed basically

3    immediately after an arrest becomes sealed. So it was gone

4    when plaintiff's arrest was DP'ed by the district attorney

5    which was literally one day after the arrest.

6          Now, we do have one color photograph of plaintiff.

7    And the reason that it should have been destroyed pursuant to

8    CPL 160.50, the reason it wasn't was because there was one

9    arrest report that was voided. And because it was voided, when

10    they went to destroy the photograph of the plaintiff, they

11    missed that one and it is available today. We would need some

12    type of satisfactory court order, but if your Honor wants to

13    provide plaintiff that color photo, it is available to the

14    plaintiff.

15          THE COURT: Why do you need a court order for that?

16          MR. ZUCKERMAN: Because of 160.50.

17          THE COURT: Which says that it is supposed to be

18    sealed or destroyed?

19          MR. ZUCKERMAN: Exactly.

20          THE COURT: But isn't one option giving it to the

21    plaintiff -- in this case, it is the plaintiff, but giving it

22    to the person who is depicted?

23          MR. ZUCKERMAN: Yes. The civil litigation unit, I

24    have dealt with similar type issues with them and they may

25    balk. They may say, we need a court order. And if your Honor

1  orders it, it would just be easier for me to get it.  There

2  just won't be a problem and I want to avoid -- because they

3  will say either we need an unsealing release or a court order.

4              THE COURT:  Because the picture should be under seal.

5              MR. ZUCKERMAN:  Right, it should be under seal.

6              THE COURT:  It is a police department snafu if it is

7  not.

8              MR. ZUCKERMAN:  Correct.  There were two arrest

9  reports.  One was voided and one wasn't.  The one that wasn't,

10  the picture was destroyed pursuant to CPL 160.50 in the regular

11  course.  It is no longer in the system.  But because one arrest

12  report was voided, it was missed, apparently, when the arrest

13  was sealed.

14              THE COURT:  Understood.  It seems to me that that

15  issue goes away.  If you want it, all you have to do is submit

16  a proposed court order.

17              MR ROZYNSKI:  Yes, your Honor.

18              THE COURT:  Is there anything more to it than that?

19              MR ROZYNSKI:  Yes, your Honor.  There is one other

20  thing.  The arresting officer or someone else at the arrest

21  took pictures that were not put into the file, that were not

22  put into the file that was sealed that was taken on a separate

23  digital camera and printed out in black-and-white.  And those

24  were not pursuant to any sealing or destruction, according to

25  the CPLR.  So I want to know what happened to those digital

1  photographs on the camera that are now not around, that they

2  are missing.

3          THE COURT:  What difference does it make?

4          MR ROZYNSKI:  The color photographs would show --

5          THE COURT:  But you are going to get the color

6  photograph that was made after her arrest.

7          MR ROZYNSKI:  Right.  These photographs are very close

8  and they are not like a mug shot.  They show potential injuries

9  of the lip.

10         THE COURT:  What difference does that make?  I am not

11 sure why any of that is relevant.  You have one color photo.  I

12 don't think one is relevant, but why do you think that the

13 pictures of her --

14         MR ROZYNSKI:  There are claims of bruises, claims of

15 abrasions.

16         THE COURT:  But you are not claiming that they beat

17 her; there is not an excessive force claim here.

18         MR ROZYNSKI:  It was a wrongful arrest and it goes to

19 probable cause as to whether they had probable cause to arrest

20 her.

21         THE COURT:  How does it go to probable cause?

22         MR ROZYNSKI:  If there was no visible injuries on

23 them, then they wouldn't have probable cause to arrest them

24 because they couldn't interview either side --

25         THE COURT:  You are talking about injuries on your

1   client.

2           MR ROZYNSKI:  On both.  They have pictures of both the

3   co-arrestee and my client.

4           THE COURT:  I am struggling to understand why the

5   pictures advance your cause.  Your claim is, they shouldn't

6   have arrested her because the other party was the aggressor,

7   right?

8           MR ROZYNSKI:  No.  We are saying that they did not

9   have probable cause to arrest both parties, namely, my client

10  because they did not assault each other and they did not

11  communicate with my client and, therefore, they did not have

12  probable cause to arrest.

13          They are saying that they had probable cause because

14  they saw that both parties had injuries.  That is what the

15  officers say.  Yes.  They saw injuries.  Yes, they may or may

16  not have been able to communicate with my client, but they saw

17  injuries and those injuries gave them reason for probable cause

18  to arrest.

19          THE COURT:  What do the pictures that you have got

20  show?

21          MR ROZYNSKI:  It is black-and-white.  It shows on the

22  co-arrestee her lip is kind of protruded out like that, and I

23  want to see if there is any bruising or any discoloration or

24  anything involving the lip of the co-arrestee, of the victim

25  that allegedly my client assaulted.

EALUWILC

1    Also, there are pictures of her leg which, in the

2  black-and-white photographs don't show any injuries.  However,

3  if there is any discoloration on her leg, I want to be able to

4  see that.  I want to see if there are any injuries I can

5  visibly see, aside from the black-and-white photographs.

6    THE COURT:  What is the story with the other pictures?

7    MR. ZUCKERMAN:  First of all, Mr. Rozynski said one

8  thing that is completely wrong.  They are subject to the same

9  requirements of CPL 160.50.

10    They were not official NYPD photographs.  They were

11  taken by the arresting officer because when he presented his

12  case to the assistant district attorney, he was thinking that

13  the district attorney may want to see them so he had

14  photographs.

15    They were taken with a domestic violence camera in the

16  precinct.  The domestic violence camera does have the ability

17  to make color photographs, however, what happens when

18  photographs are taken at the precinct that are in a domestic

19  violence incident, they are uploaded into the domestic violence

20  database.  These photographs were not updated to the domestic

21  violence database because they were not domestic violence

22  photos.

23    The reason that they were printed in black-and-white

24  is because the 122nd Precinct only had a black-and-white

25  printer, so the arresting officer printed out the

1  black-and-white photos and that's what there is.

2         THE COURT:  They don't keep the digital images on the

3  camera and they were not loaded to the database because they

4  weren't domestic violence pictures?

5         MR. ZUCKERMAN:  Exactly.

6         THE COURT:  So they don't exist.

7         MR ROZYNSKI:  It is our position that we would have a

8  right to know the circumstances surrounding the destruction of

9  those digital photographs.

10         THE COURT:  So you have the black-and-white.

11         MR ROZYNSKI:  Yes.

12         THE COURT:  There are no digital photographs other

13  than what was on the digital camera and he has just explained

14  it to you.  Do you want something more than that?

15         MR ROZYNSKI:  If he could provide any additional

16  information other than that, we would like to know.

17         THE COURT:  I don't know what else he can provide.

18         This is a sidelight to your case.

19         Seriously, you are going to get the color picture of

20  your client, not of the other arrestee, right?

21         MR. ZUCKERMAN:  That's correct.

22         THE COURT:  I am not sure what it is going to prove,

23  but you are going to give a color picture.

24         MR. ZUCKERMAN:  A color photo.

25         THE COURT:  A single color photo.

EALUWILC

1          MR ROZYNSKI:  That's fine.

2          THE COURT:  I have no reason to question what I have

3     just been told in terms of how this operates and neither do

4     you.

5          MR ROZYNSKI:  I think that the problem that I have is

6     that the law says, at the discretion of the recipient agency,

7     either destroyed or returned to such person.  The statute

8     doesn't say automatically, it says at the discretion.  And I

9     think that's the thing that bothers me and why it makes me want

10    to learn more about whose discretion was it, who destroyed it,

11    at what time was it destroyed.

12         THE COURT:  You just heard this.  This is just kind of

13    standard policy when an arrest is voided or dismissed, they get

14    rid of the pictures.  If you practice criminal law, you would

15    know that that is very important to people who represent

16    criminal defendants so that there are no pictures floating

17    around, the police department doesn't have mug shots.

18         The more disturbing information is that they don't do

19    it, so they have all of these pictures floating around that

20    should have either been sealed and destroyed and they are not

21    complying with the law which is not a good thing.

22         That said, we can have a hearing on spoliation.  I

23    don't think it is going to lead to any productive place for you

24    because by the time you file the notice of claim, those

25    pictures were long gone, right?  So you don't have a spoliation

1    claim, if that's true -- again, I don't have any reason to

2    believe that Mr. Zuckerman is not telling us the truth about

3    what he has found.  Your much bigger problem at the moment is

4    your Monell claim which is your sole claim, right?

5              MR ROZYNSKI:  No.

6              THE COURT:  Well, it is not your sole claim, but your

7    biggest claim?

8              MR ROZYNSKI:  Our ADA and rehab claim are just as big

9    as our Monell claim.

10             THE COURT:  Good.  So it is not so important then.

11             MR ROZYNSKI:  Everything is important to our client.

12             THE COURT:  Why then weren't the other complaints

13   highlighted in your letter in May as items that you had not yet

14   received?

15             MR ROZYNSKI:  Here is the thing.  We combed through

16   the record and we saw things that they didn't say that they

17   would supplement and give to us.  They just had objections.

18   And we brought those out as the focus of our letter.

19             In the conference we did talk about administrative

20   complaints and it is listed -- we did ask for administrative

21   complaint in our letter and they said that they stand by their

22   previous response to that particular request, whether it was 41

23   or 43, we wanted complaints this whole time and they were put

24   on notice through our discovery request that we wanted any and

25   all complaints related to not providing accommodations to a

1  deaf person and it is highly relevant to our case.  It is

2  highly relevant to our Monell claim.  And there is no reason

3  why they should withhold that information from us and that they

4  should follow their previous responses that they had given for

5  those requests.

6           THE COURT:  Here is my issue.  Your discovery has

7  either closed or is about to close.  It closes today.

8           MR. ZUCKERMAN:  It was supposed to close last

9  Wednesday, October 15, but your Honor extended it a few days

10  until this conference --

11           THE COURT:  -- to give us time.

12           But if this was an outstanding issue which A) you know

13  it is going to be difficult for them to find unless it is

14  cabined to lawsuits that have been filed.  I am not even sure

15  where they would go look, but perhaps you could tell me where

16  you would go look if I order it.  But from the point in time

17  when you were going to get these, whatever they were going to

18  produce, let's say there were five, my guess is that you have

19  some idea of how many there are

20           MR ROZYNSKI:  I have an idea, but I don't know

21  internally what they have.

22           THE COURT:  But you know sort of at least a floor?

23           MR ROZYNSKI:  Yes.

24           THE COURT:  So what is the floor, approximately?

25           MR ROZYNSKI:  Approximately 5 to 10 that we found.

1        THE COURT:  So there are going to be 5 to 10

2   complaints that are going to generate additional discovery

3   either from you or the City because you are going to want to

4   know who was the police officer, what did they do, who was the

5   complainant -- all of that sort of stuff.

6        This case was filed in 2012.  It is now 2014.

7   Discovery was supposed to have closed a week ago.  It is now

8   supposed to close today.  I am unhappy that I am just now

9   hearing that there is a significant issue from the plaintiff's

10  perspective that the defendants have either refused to comply

11  with or it fell between the cracks or whatever.

12       The color photo is one thing.  Who cares?  Once you

13  get it, you have it.  This is going to drive future discovery

14  in a case that is already two years old.  So why am I just now

15  hearing about this?

16       MR ROZYNSKI:  I guess what happened was, we went to

17  the conference -- Judge Francis said, where is this?  And I

18  said they are supposed to supplement it and then --

19       THE COURT:  This is a very long-winded way of saying

20  it fell behind the radiator, you lost track of it.

21       MR ROZYNSKI:  Yes.

22       THE COURT:  The question is, if I require them to do

23  it, I am going to have to extend discovery because, otherwise,

24  they are at a huge disadvantage and that is not fair to the

25  City.

EALUWILC

1          MR ROZYNSKI:  Right.

2          THE COURT:  So why should I do that?

3          MR ROZYNSKI:  Because we made the request.  They were

4   put on notice.  Yes, it fell through the cracks.  Maybe we

5   should have put a motion in earlier than now.

6          THE COURT:  Yes.

7          MR ROZYNSKI:  And I agree with you on that, but to say

8   that they were not put on notice, we did request it.

9          THE COURT:  Understood.  This is purely an issue of,

10  you made the request, they didn't comply.  I understand your

11  argument, but the reason that we set discovery deadlines is

12  because, otherwise, no one focuses their attention on what do

13  they need and that is supposed to happen not two weeks before

14  the deadline when you are sitting in front of a magistrate

15  judge but two months ahead of then so that you know what your

16  problems are and you can call them with to the court's

17  attention if a meet-and-confer don't result in what you need.

18         MR. ZUCKERMAN:  By the way, this conference with Judge

19  Francis was two weeks ago.

20         THE COURT:  That's what I said, not with a magistrate

21  judge two weeks ago.

22         If you were ordered to go find such complaints

23  beyond -- I don't know.  Have there been any filed?  Is this

24  the first lawsuit that involves a claim of a violation of the

25  ADA for failure to provide sign language interpreters?

1          MR ROZYNSKI:  There have been a few lawsuits.

2          THE COURT:  I would have thought.  How did they get

3     resolved?  Are they pending?  Were they settled.

4          MR. ZUCKERMAN:  As I handled them, they were all

5     settled.  I am aware of --

6          THE COURT:  -- some.

7          MR. ZUCKERMAN:  I can tell you how many.

8          I am aware of three others that were also.

9          THE COURT:  To your knowledge, is that the universe of

10    cases that actually resulted in a lawsuit being filed?

11         MR. ZUCKERMAN:  To the best of my knowledge, but I

12    have not done --

13         THE COURT:  You don't necessarily occupy the entire

14    deaf desk for the Corporation Counsel's office?

15         MR. ZUCKERMAN:  That is definitely true.  What I would

16    say is that, if there was an arrest associated with it, which

17    is what we are talking about here, if there was an arrest

18    associated with it, over the past three, four years, I think

19    there would be a decent chance I would know about it, but that

20    is not scientific.

21         THE COURT:  So that means we know of at least three

22    that would be easy to produce.

23         MR. ZUCKERMAN:  Produce what?

24         THE COURT:  You don't have to produce anything, you

25    can just give him the docket number.  He probably knows all of

1    them.

2             MR. ZUCKERMAN:  I assume he knows them.

3             THE COURT:  Do you know about three federal lawsuits?

4             MR ROZYNSKI:  Yes.

5             THE COURT:  So you know more than three federal

6    lawsuits?

7             MR ROZYNSKI:  I believe so, yes.

8             MR. ZUCKERMAN:  What I am upset about, your Honor, is

9    that he says he knows of five to ten lawsuits and he has not

10   disclosed who these people are.

11            THE COURT:  So they are not witnesses?

12            MR ROZYNSKI:  No, not as of yet.

13            THE COURT:  What not as of yet?

14            MR ROZYNSKI:  I was waiting to resolve this.

15            THE COURT:  That is the other issue of --

16            MR. ZUCKERMAN:  In the 54 witnesses, only one other

17   claimant was listed, a name that was I was not even familiar

18   with.  I don't know if he had brought a lawsuit, that was not a

19   name that I was familiar with.  But if he has all of these

20   names of other people and they are relevant to his Monell

21   claims, why weren't they disclosed in our discovery or his

22   initial disclosures?

23            MR ROZYNSKI:  That is correct, your Honor.  Those

24   people do need to be disclosed.

25            THE COURT:  And they were, but they were disclosed

EALUWILC

1    like yesterday, right?

2              MR. ZUCKERMAN:  No.  They still have not been

3    disclosed.  Out of those 54, only one of them is another

4    claimant.  There are people in there like former Commissioner

5    Kelly, present Police Commissioner Bratton, the United States

6    Attorney General --

7              THE COURT:  What is the story with that, those are not

8    witnesses?

9              MR ROZYNSKI:  So these people, as far as the

10   Department of Justice, they had investigated the City of New

11   York for not providing reasonable accommodations to deaf people

12   and they have relevant knowledge as to complaints that the

13   Department of Justice has received as to the City of New York

14   and their failure to comply with the ADA and the Rehab Act.

15   And they have relevant knowledge as to the case.

16             And these people's names were produced in discovery

17   way long ago in discovery, so there is no surprise as to these

18   people in the Department of Justice.  These names have been

19   produced in discovery and both parties are well aware of these

20   people's involvement in investigating complaints of

21   discrimination by deaf people against the City of New York.

22             THE COURT:  But why is that relevant to your claim?

23   Your ADA claim, it seems to me, stands or falls on their

24   failure to provide the services that are provided to everybody

25   else, right?

1          MR ROZYNSKI:  Failure to provide effective

2    communication, reasonable accommodation --

3          THE COURT:  You are talking too fast.

4          MR ROZYNSKI:  Failure to provide reasonable

5    accommodation and effective communication to deaf people.

6          THE COURT:  So that stands or falls on its own.  They

7    either did or they didn't.

8          MR ROZYNSKI:  That's standard, yes.

9          THE COURT:  The Monell claim is a pattern or practice

10   of not providing the required sign language interpreter, right?

11         MR ROZYNSKI:  Correct.

12         THE COURT:  So whether the DOJ has investigated other

13   claims or not, how does that advance your position that there

14   is a pattern or practice?  Have they brought a lawsuit?

15         MR ROZYNSKI:  They were so compelled they are about to

16   bring a lawsuit.

17         THE COURT:  And they haven't.

18         MR ROZYNSKI:  They settled.  And again they sent a

19   letter on July 30, 2014, basically requesting more information

20   because they were put on notice that there were more complaints

21   and they are currently in discussions with the City of New York

22   again.

23         THE COURT:  But that is later, so that is after your

24   event.

25         MR ROZYNSKI:  There is a before event and there is an

1  after event.

2         THE COURT:  So the after event is kind of neither here

3  nor there whether on the date and time that your client was

4  arrested, there was a pattern or practice of discriminating

5  against and violating the civil rights of deaf people.

6         MR ROZYNSKI:  Right.  The earlier claim would be

7  relevant to this.  They were put on notice that there were

8  previous complaints, that they made an agreement with the

9  Department of Justice and they still didn't comply and, as a

10  result, my client was not provided the appropriate services

11  that she needed to be provided.

12         THE COURT:  What was the agreement between the United

13  States and the City?

14         MR. ZUCKERMAN:  It was a settlement agreement.

15         THE COURT:  I cannot believe that they agreed to

16  provide a deaf sign language interpreter every time a police

17  officer encounters a deaf person.  That is not realistic.

18         MR. ZUCKERMAN:  That is exactly right.

19         THE COURT:  Do you know what the agreement is?

20         MR. ZUCKERMAN:  On that point?

21         THE COURT:  That is the claim.  This all rises, as I

22  understand it, it kind of all rises or falls on the fact that

23  either at the scene, which I think is unrealistic, or at the

24  police department, there was no effective way of communicating

25  with the plaintiff.

1          MR. ZUCKERMAN:  I have read the agreement and have to

2     reread it, but there was nothing definite as to saying, let's

3     say, arrest location, NYPD has to provide a sign language

4     interpreter at the scene of arrest and, likewise, back at the

5     precinct, there is nothing that says NYPD has to provide a sign

6     language interpreter at the precinct.  It is more general than

7     that.

8          MR ROZYNSKI:  The agreement is 20-something pages with

9     several exhibits that are attached to it that talk extensively

10    of the City's obligations and what their obligations are in

11    different types of scenarios and things of that sort.  And the

12    City was put on notice of their obligations and the DOJ

13    concerns prior to Diana Williams' arrest and Diana's situation

14    happened after they agreed to that and that is a major point.

15         THE COURT:  My question is after they agreed to what?

16         MR. ZUCKERMAN:  If I can, Judge, I can help you with

17    that.

18         Even though there was no scenario-specific type

19    language in the document, there was an agreement as to the

20    promulgation of policy document and certain training, all of

21    which has been provided to Mr. Rozynski in discovery.  That is

22    exactly what the past few months have focused on and the 4200

23    pages.  And he took a Rule 30(b)(6) deposition on this issue as

24    to what our policies are, what our training procedures are --

25    that sort of thing.  That's what I have been providing.  That

1  was the focus of Mr. Rozynski's discovery for months, and

2  that's what I was providing in the 4,000 pages.

3         THE COURT:  So the consent decree focused on the NYPD?

4         MR. ZUCKERMAN:  The settlement agreement.  It was not

5  a consent decree; it was a private settlement agreement.

6         THE COURT:  So the settlement agreement focused on the

7  NYPD being required to establish some policies and procedures?

8         MR. ZUCKERMAN:  Except I would just clarify that in

9  one way.  A lot of those polices and procedures and training

10  were already in place.  So there were some additions, but a lot

11  of it was already in place.  It was not all new.

12         THE COURT:  OK.

13         MR ROZYNSKI:  I would disagree with Mr. Zuckerman's

14  interpretation.  It did provide extensive steps and procedures

15  and things that they needed to follow, including with

16  attachments of best practices and how to provide effective

17  communications and what they needed to have in place.  They

18  needed to provide qualified sign language interpreters and

19  things of that sort.

20         If your Honor would like to take a look at the

21  agreement, we can produce that to you in any type of motion or

22  anything of that sort.

23         THE COURT:  No.  We sort of got off track.  I was

24  trying to figure out why the Attorney General and the U.S.

25  Attorney in this district are anywhere in the scheme of things

1    relevant witnesses to you.

2           MR ROZYNSKI:  Because they investigated and they

3    received complaints from deaf people and that's what prompted

4    their investigation of the City of New York because of the

5    complaints that they had received from deaf individuals.  So

6    they have relevant knowledge as to what complaints were

7    received, what prompted them to investigate the City of New

8    York for these violations and the complaints that deaf people

9    would have.

10          THE COURT:  I am struggling with that, if a complaint

11   goes to the Department of Justice or the U.S. Attorney's

12   office, that doesn't necessarily put the City of New York on

13   notice unless they are also complaining to the City of New

14   York.

15          MR ROZYNSKI:  Right.  In these circumstances, they

16   received the complaint.  They investigated them, which prompted

17   this whole settlement agreement with the City of New York.

18          THE COURT:  It just seems like a total frolic and a

19   detour.  You need to be able to prove that there is a pattern

20   or practice.

21          MR ROZYNSKI:  Correct.  I think that the Department of

22   Justice has relevant knowledge as to City of New York's pattern

23   and practice because they investigated the complaints against

24   the City of New York and they made a settlement agreement with

25   the City of New York, so they have relevant knowledge.

EALUWILC

1    THE COURT:  I am not ruling on evidentiary issues

2    here, but it seems to me that that is secondhand.  What you

3    need is to be able to prove that the New York City Police

4    Department has a pattern or practice, which it seems to me has

5    to be more than three or four matters, of not providing

6    services to deaf people.

7    MR ROZYNSKI:  The Department of Justice has that

8    information.

9    THE COURT:  Well, do you have that information?

10    MR ROZYNSKI:  I don't have that information, no, your

11    Honor.

12    THE COURT:  How are you going to get that information?

13    MR ROZYNSKI:  I don't know, your Honor.

14    THE COURT:  It seems to me that you have a problem, at

15    least on your Monell claim.  I am not saying that you have a

16    problem on your Rehab Act or your ADA claim.  I don't know that

17    you have a winning case.  I don't know whether one encounter,

18    failing to provide an interpreter gives rise to an actual claim

19    of discrimination, whether a jury would find that or not.  I

20    assume that this sort of thing happens all the time with people

21    who speak a foreign language and they can't come up with an

22    interpreter who speaks that language right then.  I don't know.

23    I have no idea.

24    But I am really troubled with the notion that if I

25    grant your request to compel them to come up with whatever the

EALUWILC

administrative complaints were, that all of that is doing is really just essentially reopening discovery that should have been done over the last two years, and I don't know why I should do that and you are not really giving me a good reason why I should do that.

MR ROZYNSKI:  The reason is, your Honor, as I said before, is because we requested it and they should have provided it and they didn't and we are at this point now.  We are asking the Court to let us get that information that we were entitled to earlier in the case.

THE COURT:  Right.  But that is not all you are asking because even if I order Mr. Zuckerman to provide the complaints, then you've got a whole bunch of witnesses who have never been deposed, that they are going to have a right to depose.  So how is that fair to the City without reopening discovery for another six months?

MR ROZYNSKI:  Because they have already had a case against them, they have already completed discovery against those plaintiffs --

MR. ZUCKERMAN:  That is not true.  We settled those cases.

THE COURT:  You have no reason to believe that is true.

MR. ZUCKERMAN:  We settled those three cases.

THE COURT:  You are going beyond those three cases, so

1    you don't need their discovery for that.

2              MR ROZYNSKI:  Right.

3              THE COURT:  What you want to know is whether there are

4    others.

5              MR ROZYNSKI:  Yes.

6              THE COURT:  And as to others, whether there are

7    administrative claims or CCRB claims -- again, you have not

8    really --

9              MR ROZYNSKI:  Department of Justice claims or claims

10   by the New York Commission on Human Rights.

11             THE COURT:  This is the City, so you are limited to

12   what the City has.  So they are not going to know.

13             MR ROZYNSKI:  If they received complaints from

14   those --

15             MR. ZUCKERMAN:  I don't even know what CCRB has.  The

16   Corporation Counsel does not represent CCRB.

17             MR ROZYNSKI:  But you get the complains from CCRB once

18   they are made.

19             MR. ZUCKERMAN:  What we get is individual cases.  We

20   get officers' resumes who are sued.  We get their CCRB resumes

21   and then we have to request particular files.

22             THE COURT:  So unless they are sued, you don't have

23   access to it; so CCRB is, as to the City of New York, treated

24   as though they are a third party?

25             MR. ZUCKERMAN:  They do accommodate us on simple

EALUWILC

things, for instance, getting a CCRB resume.  An officer is

sued, we send a request to CCRB, can we have the officer's

resume of CCRB history.  They will give us that.  And if we

request particular files on an officer's resume, many times

they give it to us.  But what Mr. Rozynski is seeking, it

seems, is some type of search of all of their files -- I don't

even know if they could do it -- but he is seeking some type of

search of all of their files to see which ones, if any, deal

with discrimination against hearing impaired people.  That is

not something --

THE COURT:  Their files are not set up that way?

Their files are set up by police officer or by incident?  You

don't even know?

MR. ZUCKERMAN:  What I can say is, every time somebody

brings a complaint, it is given a CCRB number.  So for each

file, for each case, there is a file number.

THE COURT:  So the file is set up by complaint and

maybe with some databases that cross reference to the police

officer -- I am just speculating.

MR. ZUCKERMAN:  But the important point is,

Corporation Counsel does not represent CCRB.  They are not our

client.

When your Honor issues an order to NYPD, obviously, we

go -- the Court has ordered it and you have to comply, but I am

not the attorney for CCRB.  We don't represent them.  They are

1   an independent agency.

2            THE COURT:  Of the City.

3            MR. ZUCKERMAN:  I have never seen their charter.

4            THE COURT:  So you literally don't represent them so

5   even if the CCRB were sued, the Corporation Counsel's office

6   does not represent CCRB?

7            MR. ZUCKERMAN:  That's my knowledge.  CCRB is totally

8   independent of us.

9            THE COURT:  Of the City?

10           MR. ZUCKERMAN:  Of the Corporation Counsel's office.

11           THE COURT:  But Corporation Counsel's office

12   represents any agency that is part of the City if they get

13   sued?

14           MR. ZUCKERMAN:  I don't know that that's the case, but

15   I do know CCRB is independent of us.  We don't represent CCRB.

16           THE COURT:  Do you want an opportunity to submit

17   further papers on why I should essentially extend discovery for

18   what is going to amount to another six months and a better

19   explanation, kind of a cabined request for what you really

20   want, recognizing that the likelihood of you getting this is

21   zero.  The likelihood of you getting this -- for the record,

22   holding my hands way far apart in the first instance and real

23   close together in the second instance -- is more likely, but I

24   am also going to want to know if you get new complaints that

25   you don't know about now, because if you know about them now

1   you should tell the City what you know about now so that they

2   are not searching for them.

3           What are you going to do with that information because

4   that is going to give you some sense of whether we are talking

5   six months of discovery or three months of discovery.  But,

6   again, sharpen your pencil and figure out what you really need,

7   what can you prove now and, again, why I should agree to, with

8   the case that I had actually hoped we were getting ready -- are

9   you going to make a motion for summary judgment.

10          MR. ZUCKERMAN:  Partial.

11          THE COURT:  Partial to what?

12          MR. ZUCKERMAN:  The arrest and then some other claims,

13   the Monell, possibly, the infliction of emotional harm,

14   negligent hiring -- that sort of thing.

15          THE COURT:  What do you think is not subject to

16   summary judgment?

17          MR. ZUCKERMAN:  Possibly the discrimination, but we

18   were not planning to move on that.  As of the moment, that is

19   my answer.

20          THE COURT:  That sounds right.

21          So given what you know the state of play is going to

22   be relative to a motion for summary judgment --

23          MR ROZYNSKI:  Yes.

24          THE COURT:  -- how long do you want to put something

25   in?

1        MR ROZYNSKI:  14 days to put in a motion.

2        THE COURT:  It doesn't have to be styled as a motion.

3   I just want a submission.  That is two weeks.  Do you need that

4   long?

5        MR ROZYNSKI:  How many pages do you need or how

6   extensive briefing do you need?

7        THE COURT:  I want it to be as short and to the point

8   as possible, so I will give you 10 pages.

9        I will give you 10 pages if you want to respond.  It

10  may be easier just to give him the files, depending --

11       MR. ZUCKERMAN:  I don't know what files.

12       THE COURT:  That is part of what he is going to be

13  telling us.  Part of what you have to do is cabin this request.

14  What do you want searched, recognizing that I am not going to

15  order him to search CCRB because I sincerely doubt:  One, I

16  doubt that's where the complaints would have gone; and, two, I

17  doubt there is an easy way of them pushing a button and getting

18  deaf complaints.  So you need to describe where do you want him

19  to search, what do you want him to search for, for how long

20  because all of those are going to be pertinent to the burden

21  that is being imposed on the City at this point in a case where

22  discovery should have closed.

23       So today is the 21st.  So suppose I give you 10 days.

24  I will give you to Halloween -- you will take that, I'm sure.

25  Your brief is due on the 31st.  You get no more than 10 pages

EALUWILC

1  to explain what you want, why you want it and what are you

2  going to do with it.

3          Are you going to want to reply?

4          MR. ZUCKERMAN:  I guess we reserve the right.

5  Normally, I would request seven days.  I do have one problem.

6  On November 5 I am scheduled for jury duty, 111 Centre Street.

7          THE COURT:  I will give you the same 10 days.  If you

8  get put on a jury, obviously, just let me know and we will

9  extend it appropriately.  So your response will be due on

10  November 10, if you decide to reply.  If you decide you don't

11  want to reply, that is fine too.

12         MR ROZYNSKI:  Should I include any subpoenas in terms

13  of the Department of Justice or anything else in that letter as

14  well?

15         THE COURT:  No.  This is just for purposes of your

16  document request to the City.

17         MR ROZYNSKI:  OK.

18         THE COURT:  Also, whenever you want to, but in the

19  next week or so, if you will send me a proposed court order to

20  get the color photo.

21         MR. ZUCKERMAN:  Actually, I would suggest that I

22  prepare that because I will go into their office and I will

23  show them the proposed order and ask them, will this be

24  sufficient.

25         THE COURT:  Can you do that by the end of the month,

1    get me a proposed order?

2              MR. ZUCKERMAN:  Definitely.

3              THE COURT:  Your proposed order will be due on the

4    31st.

5              Anything else?

6              MR ROZYNSKI:  Yes, your Honor.

7              I recently served a subpoena on the Lexington School

8    for the Deaf.

9              THE COURT:  The Lexington School for the Deaf?

10             MR ROZYNSKI:  Yes.

11             THE COURT:  Is that in Lexington or is it here?

12             MR ROZYNSKI:  It is here.

13             And I don't know if defendant still objects, but it

14   was in his letter but we served it on them.  They returned us

15   the information.  And I served it on counsel yesterday.

16             I don't know if you still object.

17             THE COURT:  What is the issue?

18             MR. ZUCKERMAN:  The issue is that it was late.  It was

19   returnable after the close of discovery.  I just want to say

20   something.  The documents were produced and they were produced

21   and that's the way it goes, I guess.

22             And I do want to put on the record that Rule 45(a)(4)

23   requires that the City -- that each party be provided notice of

24   a subpoena before it is served.  What they did, one night -- I

25   don't know what day it was -- after business hours they sent an

email to me attaching the subpoena. The next day they went out

and served it. I don't know that is appropriate notice under

the rule. I think that we ought to be given more time and I

just don't think that was handled properly. But at this point

the documents have been produced and I think that we just have

to live with it.

THE COURT: I think that we should view this as a

learning opportunity. That is not the right way to practice

law. You shouldn't do it that way. You have to give your

opponent time to object. You have to pay attention to

discovery so that you get the discovery that you expect and not

wait until you are in a settlement conference two weeks before

discovery because this is what happens.

MR. ZUCKERMAN: Just two other small issues. There

were new interrogatories and requests for admissions on the

issues that we brought to your Honor about these complaints.

MR ROZYNSKI: I will withdraw them.

MR. ZUCKERMAN: Then we just have the issue of expert

discovery. I am only raising it --

THE COURT: What is the deadline for expert discovery?

MR. ZUCKERMAN: November 3rd. If we could push that

back to December 3rd, I think that would allow everybody to do

what they want to do.

MR ROZYNSKI: I just want to depose their experts.

MR. ZUCKERMAN: He just told me for the first time

EALUWILC

1  that he wants to depose our psychiatric expert today, and he

2  just needs to clear up some time on his client calendar.

3      THE COURT:  I will extend the deadline for expert

4  discovery until December 3rd.

5      MR ROZYNSKI:  On Judge Sweet's order, it says that the

6  pretrial order draft is due at the end of discovery to the

7  other side, but your individual practice rules say two weeks

8  before trial and I am just asking as a housekeeping matter what

9  controls.

10      THE COURT:  Mine is going to control.  And what I am

11  going to do is, I will also set up another status conference

12  following the end of expert discovery when all discovery is in.

13  We will set up a schedule for summary judgment motions and then

14  the joint pretrial order is way down the road at this point

15  because we are going to need to rule on those to figure out

16  what is left in this case that is actually going to go to

17  trial.

18      MR ROZYNSKI:  We will put everything else in the

19  letter to you and let you know what we are looking for.

20      THE COURT:  OK.

21      Mr. Zuckerman, anything from you?

22      MR. ZUCKERMAN:  We are good.

23      Thank you, your Honor.

24      THE COURT:  Thank you.

25                    o   0   o