UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIANA WILLIAMS,

Plaintiff,

-against-

THE CITY OF NEW YORK,

Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Mark D. Zuckerman*
*Tel: (212) 356-3519*
*Matter No. 2012-038983*

**TABLE OF CONTENTS**

                                                                                                        **Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 1

SUMMARY JUDGMENT LEGAL STANDARD ...................................................... 8

ARGUMENT

       POINT I

              THE CITY IS NOT LIABLE FOR ALLEGED
              DISCRIMINATION AT THE SCENE OF THE
              ARREST ................................................................................. 9

       POINT II

              PLAINTIFF'S FALSE ARREST CLAIM MUST
              BE DISMISSED ..................................................................... 13

       POINT III

              PLAINTIFF'S ASSAULT AND BATTERY
              CLAIM MUST BE DISMISSED ............................................ 16

       POINT IV

              PLAINTIFF'S INTENTIONAL INFLICTION OF
              EMOTIONAL HARM CLAIM MUST BE
              DISMISSED ........................................................................... 17

       POINT V

              PLAINTIFF'S NEGLIGENT HIRING CLAIMS
              MUST BE DISMISSED ......................................................... 18

       POINT VI

              THE CITY IS PROTECTED BY STATE LAW
              IMMUNITY............................................................................ 20

       POINT VII

              MUNICIPAL LIABILITY DOES NOT LIE........................... 21

CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

Akins v. Glens Falls City Sch. District,
    53 N.Y.2d 325, 441 N.Y.S.2d 644 (1981) ................................................................. 19

Alfaro v. Wal-Mart Stores, Inc.,
    210 F.3d 111 (2d Cir. 2000) ..................................................................................... 19

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) .................................................................................................... 8

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2008) .............................................................................................. 17

Baker v. McCollan,
    443 U.S. 137 (1979) .................................................................................................. 14

Bd. of the County Commissioners v. Brown,
    520 U.S. 397 (1997) .................................................................................................. 22

Beck v. Ohio,
    379 U.S. 89 (1964) .................................................................................................... 14

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) .................................................................................................. 17

Bernard v. United States,
    25 F.3d 98 (2d Cir. 1994) ......................................................................................... 13

Bircoll v. Miami-Dade County,
    480 F.3d 1072 (11th Cir. 2007) ................................................................................ 11

Boyd v. City of New York,
    336 F.3d 72 (2d Cir. 2003) ................................................................................... 13-14

Broughton v. State of New York,
    37 N.Y.2d 451 (1975) ............................................................................................... 13

Bruno v. City of New York,
    89 Civ. 6661 (KMW), 1992 U.S. Dist. LEXIS 4921 (S.D.N.Y. Apr. 15, 1992) ..................... 23

Catanzaro v. City of Middletown Police Department,
    233 A.D.2d 415 (2d Dept. 1996) .............................................................................. 15

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) .......................................................................................... 8, 9, 21

**Cases**                                                                                                               **Pages**

Cerbelli v. City of New York,
   No. 99-CV-6846 (ARR), 2008 U.S. Dist. LEXIS 109341 (E.D.N.Y. Sept. 8, 2008)
   *report* *accepted* *by*, 2008 U.S. Dist. LEXIS 77335, at *2-4 (E.D.N.Y. Sept. 30, 2008) .... 19-20

City of Canton v. Harris,
   489 U.S. 378 (1989)................................................................................................ 22

City of Oklahoma City v. Tuttle,
   471 U.S. 808 (1985)................................................................................................ 22

Coffey v. City of New York,
   49 A.D.3d 449 N.Y.S.2d 551 (1st Dep't 2008) ...................................................... 19

Colodney v. Continuum Health Partners, Inc.,
   No. 03 Civ. 7276 (DLC), 2004 U.S. Dist. LEXIS 6606 (S.D.N.Y. Apr. 15, 2004) ............... 19

Connick v. Thompson,
   131 S. Ct. 1350 (2011)............................................................................................ 21

Crocker v. Lewiston Police Department,
   00-13-P-C, 2001 U.S. Dist. LEXIS 25872, 27-28 (D. Maine 2001) ....................... 10

Curley v. Village of Suffern,
   268 F.3d 65 (2d Cir. 2001) ............................................................................ 14, 16

Deleon v. City of Alvin Police Department,
   H-09-1022, 2010 U.S. Dist. LEXIS 126116 (S.D. Texas 2010) ............................. 12

EEOC v. Die Fliedermaus, L.L.C.,
   77 F. Supp. 2d 460 (S.D.N.Y. 1999) ...................................................................... 17

Ehrens v. Lutheran Church,
   385 F.3d 232 (2d Cir. 2004) ................................................................................... 19

Haddock v. City of New York,
   75 N.Y.2d 478 (1990) ............................................................................................. 20

Hainze v. Richards,
   207 F.3d 795 (5th Cir. 2000) ............................................................................ 11, 12

Hansel v. Sheridan,
   991 F. Supp. 69 (N.D.N.Y. 1998)........................................................................... 18

Howell v. New York Post Co.,
   81 N.Y.2d 115 (1993) ....................................................................................... 17, 18

**Cases**                                                                           **Pages**

Hygh v. Jacobs,
961 F.2d 359 (2d Cir. 1992) ................................................................. 13

Illinois v. Gates,
462 U.S. 213 (1983)................................................................................ 14

Iorio v. City of New York,
19 A.D.3d 452 (2d Dept. 2005) ............................................................ 15

Jocks v. Tavernier,
316 F.3d 128 (2d Cir. 2003) ................................................................. 16

Johnston v. Port Authority of New York & New Jersey,
No. 09-CV-4432(JG), 2011 U.S. Dist. LEXIS 82815 (E.D.N.Y. July 28, 2011).............. 16-17

Kovit v. Hallums,
4 N.Y.3d 499 (2005),
rev'g, 307 A.D.2d 336 (2nd Dep't 2003) ............................................... 20

Krause v. Bennett,
887 F.2d 362 (2d Cir. 1989) ................................................................. 15

Lane Capital Management, Inc. v. Lane Capital Management, Inc.,
192 F.3d 337 (2d Cir. 1999) ................................................................... 9

Lazan v. County of Suffolk,
4 N.Y.3d 499 (2005),
rev'g, 11 A.D.3d 589 (2nd Dep't 2004) ................................................ 20

Loeffler v. Staten Island University Hospital,
582 F.3d 268 (2d Cir. 2009) ........................................................... 12, 13

Maliha v. Faluotico,
No. 07-1106-cv, 2008 U.S. App. LEXIS 13097 (2d Cir. 2008) ............................. 15

McCray v. City of Dothan,
169 F. Supp.2d 1260 (D. Ala. 2001)...................................................... 12

McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.,
256 A.D.2d 26 N.Y.S.2d 167 (1st Dep't 1998) ....................................... 18

McLean v. City,
12 NY3d 194 (2009)............................................................................. 20

Medina v. City of New York,
102 A.D.3d 101 (1st Dept. 2012)........................................................... 15

| **Cases** | **Pages** |
|---|---|

*Mesa v. City of New York,*
   09 Civ. 10464, 2013 U.S. Dist. LEXIS 1097 (S.D.N.Y. Jan. 3, 2013) ..................................... 17

*Miloslavsky v. AES Engineering Society, Inc.,*
   808 F. Supp. 351 (S.D.N.Y. 1992),
   aff'd, 993 F.2d 1534 (2d Cir. 1993) .................................................................................. 14, 15

*Missick v. City of New York,*
   707 F. Supp.2d 336 (E.D.N.Y. 2010) ...................................................................................... 12

*Mistretta v. Prokesch,*
   5 F. Supp. 2d 128 (E.D.N.Y. 1998) ......................................................................................... 15

*Mon v. City of New York,*
   78 N.Y.2d 309 N.Y.S.2d 529 (1991) ...................................................................................... 20

*Monell v. Dep't of Soc. Servs.,*
   436 U.S. 658 (1978) ............................................................................................... 21, 22, 23

*Moore v. The City of New York,*
   219 F. Supp. 2d 335 (E.D.N.Y. 2002) .............................................................................. 17, 18

*Newton v. City of New York,*
   681 F. Supp. 2d 473 (S.D.N.Y. 2010) ..................................................................................... 19

*Panetta v. Crowley,*
   460 F.3d 388 (2d Cir. 2006) ................................................................................................... 14

*Patrice v. Murphy,*
   43 F. Supp.2d 1156 (W.D. Wash. 1999) ................................................................................. 10

*Pembaur v. City of Cincinnati,*
   475 U.S. 469 (1986) ................................................................................................................ 22

*People v. Bero,*
   139 A.D.2d 581 (1988) ........................................................................................................... 15

*People v. Burton,*
   194 A.D.2d 731 (2d Dept. 1993) ............................................................................................ 15

*People v. Gonzalez,*
   138 A.D.2d 622 (2d Dept.1988) ............................................................................................. 15

*People v. Martin,*
   221 A.D.2d 568 (2d Dept. 1995),
   app. den. , 87 N.Y.2d 1021 (1995) ......................................................................................... 15

**Cases**                                                                                  **Pages**

People v. Nichols,
    156 A.D.2d 129 (1st Dep't 1989) .......................................................................... 15

People v. Walker,
    278 A.D.2d 852 (4th Dep't 2000) .......................................................................... 15

Pierson v. Ray,
    386 U.S. 547 (1967) ............................................................................................... 14

Powell v. National Board of Medical Examiners,
    364 F.3d 79 (2d Cir. 2004) .................................................................................... 9

Quaratino v. Tiffany & Co.,
    71 F.3d 58 (2d Cir. 1995) ...................................................................................... 8

Quinn v. City of New York,
    No. 99-CV-7068(JBW), 2003 U.S. Dist. LEXIS 3521 (E.D.N.Y. 2003) ............... 14

Reynolds v. Giuliani,
    506 F.3d 183 (2d Cir. 2007) .................................................................................. 21

Ricciuti v. N.Y.C. Transit Authority,
    941 F.2d 119 (2d Cir. 1991) .................................................................................. 22

Ricciuti v. New York City Transit Authority,
    124 F.3d 123 (2d Cir. 1997) .................................................................................. 14

Rosen v. Montgomery County Maryland,
    121 F.3d 154 (4th Cir. 1997) ................................................................................. 10

Sarus v. Rotundo,
    831 F.2d 397 (2d Cir. 1987) .................................................................................. 21

Sforza v. City of New York,
    07 Civ. 6122, 2009 U.S. Dist. LEXIS 27358 (S.D.N.Y. Mar. 31, 2009) ............... 21

Shapiro v. County of Nassau,
    202 A.D.2d 358 (1st Dept. 1993) ......................................................................... 15

Singer v. Fulton County Sheriff,
    63 F.3d 110 (2d Cir. 1995) .................................................................................... 13

Smith v. City of New York,
    388 F. Supp. 2d 179 (S.D.N.Y. 2005) ................................................................... 15

| Cases | Pages |
|---|---|

Smith v. Montefiore Med. Center-Health Servs. Div.,
    22 F. Supp. 2d 275 (S.D.N.Y. 1998) ................................................................. 22

Stokes v. City of New York,
    No. 05-CV-7(JFB), 2007 U.S. Dist. LEXIS 32787 (E.D.N.Y. May 3, 2007) ........................ 19

Tucker v. Tennessee,
    539 F.3d 526 (6th Cir. 2008) .......................................................................... 11

Twin Laboratories, Inc. v. Weider Health & Fitness,
    900 F.2d 566 (2d Cir. 1990) ............................................................................ 8

Wahhab v. City of New York,
    386 F. Supp. 2d 277 (S.D.N.Y. 2005) ................................................................ 14

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996) ....................................................................... 13, 14

Williams v. City of New York,
    208 A.D.2d 919 (2d Dept. 1994) ..................................................................... 15

Yan v. City of New York,
    No. 09-CV-1435(CBA), 2011 U.S. Dist. LEXIS 137549 (E.D.N.Y. Nov. 30, 2011),
    aff'd , , 3 (2d Cir. Feb. 1, 2013) ..................................................................... 16

Ying Jing Gan v. City of New York,
    996 F.2d 522 (2d Cir. 1993) ............................................................................ 9

Young v. County of Fulton,
    160 F.3d 899 (2d Cir. 1998) ......................................................................... 22

**Statutes**

42 U.S.C. §1983 ................................................................................... 13, 21

Fed. R. Civ. P. 8(a)(2) ............................................................................ 21

Fed. R. Civ. P. 30(b)(6) ............................................................................. 8

Fed. R. Civ. P. 56(c) .............................................................................. 8, 9

N.Y. Penal Law § 120 ............................................................................... 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

DIANA WILLIAMS,

                         Plaintiff,

              -against-

THE CITY OF NEW YORK,

                      Defendant.

------------------------------------------------------------------------ x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

12 CV 6805 (VEC)

## PRELIMINARY STATEMENT

Defendant City of New York (the "City") hereby respectfully submits its Memorandum of Law in support of its motion for partial summary judgment. For the reasons set forth herein, defendant's motion should be granted in its entirety and plaintiff's complaint dismissed, except for her discrimination claims while she was detained at the NYPD's 122nd Precinct and Staten Island Central Booking.

## STATEMENT OF FACTS

The events giving rise to this lawsuit occurred on September 11-12, 2011. (D's 56.1, ¶ 1)

As of September 11, 2011, plaintiff and her husband, Christopher Williams, owned residential real estate located at 265 Hillbrook Drive, Staten Island, New York. (D's 56.1, ¶ 2)

On September 11, 2011, Christopher Williams was living in the basement of 265 Hillbrook Drive, and the Williams' two tenants, Lorena White and Nicole Sabella, were renting rooms upstairs. The three of them also shared common areas within the premises. (D's 56.1, ¶ 3)

Lorena White and Nicole Sabella were friends at the time that they had rented the foregoing space from the Williams'. (D's 56.1, ¶ 4)

Thereafter, the Williams' began to have problems with Lorena White due to her non-payment of rent. (D's 56.1, ¶ 5)

Christopher Williams had also been told by Lorena White's ex-husband that Lorena White was a "very violent" and "crazy" person. Christopher Williams also thought that she was "crazy" from his interactions with her and thought she had gotten very "angry," "aggressive" and "intimidating" with him. (D's 56.1, ¶ 6)

As a result, the Williams' lawyer sent Lorena White a letter "advising her to move out within 30 days." (D's 56.1, ¶ 7)

Upon receiving the letter, according to Christopher Williams, Lorena White "threatened" him, was "angry" and called the police to complain about him. (D's 56.1, ¶ 8)

The 30th and final day for Lorena White to move out was September 11, 2011, and Christopher Williams decided to call the police to assist in that process as he knew in advance that Nicole Sabella and Lorena White were planning to move out that day. (D's 56.1, ¶ 9)

As of September 10, 2011, plaintiff was residing principally in Maryland, where the Williams' two children were attending school. (D's 56.1, ¶ 10)

Plaintiff is deaf. (D's 56.1, ¶ 11)

Plaintiff drove to Staten Island in the evening of September 10, 2011 to be present when Lorena White and Nicole Sabella moved out (Nicole Sabella decided to move out when Lorena White was asked by the Williams' to move out in order to continue to live with her), as was requested of Lorena White for non-payment of rent. (D's 56.1, ¶ 12)

The Williams' felt that Diana Williams had to be present for the "move-out" to ensure that "everything went smoothly." (D's 56.1, ¶ 13)

Christopher and Diana Williams had agreed with each other in advance that they would call the police the morning of September 11, 2011 to ensure that the "move-out" "went smoothly" and so the police could "monitor" it. (D's 56.1, ¶ 14)

The Williams' were expecting problems in connection with the "move-out," which is why they wanted the police present for it. (D's 56.1, ¶ 15)

Pursuant to their plan to call the police to "monitor" the "move-out," the Williams' placed a phone call to the police around 10 a.m. on the morning of September 11, 2011 from the Williams' basement where Christopher Williams had been residing and Diana Williams had spent the night. (D's 56.1, ¶ 16)

In their phone call to the police, the Williams' explained to the 911 operator that Lorena White "was very angry" and that they were "afraid that anything could happen." (D's 56.1, ¶ 17)

Plaintiff then went upstairs to talk to Nicole Sabella about some "missing items that were in the kitchen." (D's 56.1, ¶ 18)

Plaintiff had brought the family dog with her from Maryland to 265 Hillbrook Drive when she traveled to New York in the evening of September 10, 2011. (D's 56.1, ¶ 19)

Pursuant to the Williams' agreement with their tenants, the dog was not supposed to go into Lorena White's bedroom. (D's 56.1, ¶ 20)

After plaintiff went upstairs to discuss the "missing items" in the kitchen (the "cutting board") with the Williams' tenants, Christopher Williams heard the dog barking, seemingly because plaintiff's brother, David Rivera, was at the front door.  (D's 56.1, ¶ 21)

As Christopher Williams and David Rivera were talking near the front door, the dog ran upstairs to find plaintiff and David Rivera couldn't catch the dog.  (D's 56.1, ¶ 22)

The dog went into Lorena White's room, plaintiff went to retrieve it, and there was a confrontation between Lorena White and plaintiff, as Lorena White was in her room.  (D's 56.1, ¶ 23)

During the confrontation, according to Diana Williams, Lorena White threatened to hurt her.  (D's 56.1, ¶ 24)

During the confrontation, plaintiff admits that she "push[ed] [Lorena] away to stop her," as plaintiff was holding her dog in her hand.  Plaintiff was pushing Lorena White away with an "open palm toward her."  Plaintiff admits to "mov[ing] her back with [her] hand" and that it was "possible" that she touched her.  (D's 56.1, ¶ 25)

During the confrontation, plaintiff contends that Lorena White "came right in [her] face…"  (D's 56.1, ¶ 26)

During the confrontation, plaintiff "got a scratch on her chin" from Lorena White.  (D's 56.1, ¶ 27)

Plaintiff's brother, David Rivera, had to "get in the middle of them" to keep Lorena White and plaintiff apart.  (D's 56.1, ¶ 28)

Christopher Williams then saw plaintiff coming downstairs with the dog and "when [he] looked at her, [he] knew something wasn't right.  (D's 56.1, ¶ 29)

At or about the same time, Christopher Williams could see David Rivera calming Lorena White down, and noticed that Lorena White "was very upset." (D's 56.1, ¶ 30)

That's when Christopher Williams "knew something was going to happen…..I knew I was going to have to call the police." (again) (D's 56.1, ¶ 31)

Plaintiff, who had gone outside after the altercation with Lorena White, then told Christopher Williams that she was mad at him for letting the dog go upstairs as they talked outside. (D's 56.1, ¶ 32)

The Williamses then waited 10-15 minutes for the police to respond to their initial call, but they didn't arrive. (D's 56.1, ¶ 33)

Christopher Williams and David Rivera tried to call the police again, but could not within 265 Hillbrook Drive, because Christopher Williams' internet had been disconnected while Nicole Sabella was packing, for which Christopher Williams was "so angry" at her. (D's 56.1, ¶ 34)

Lorena White's then boyfriend, first name "Alendi," then arrived and tried to let himself in the residence, to which Christopher Williams objected because the police hadn't arrived. (D's 56.1, ¶ 35)

Lorena White's boyfriend was "hearing." (not deaf) (D's 56.1, ¶ 36)

Christopher Williams confronted Lorena White's boyfriend at the entrance to the residence, and the boyfriend pushed him. (D's 56.1, ¶ 37)

Lorena White's boyfriend then started to curse at him. (D's 56.1, ¶ 38)

Lorena White's boyfriend then "made his hand into a clear gun shape—made a gun with his hand, pointed at [Christopher Williams] and said, I'm going to shoot you." (D's 56.1, ¶ 39)

In his own words, Christopher Williams testified at his deposition that he and Lorena White's boyfriend "were fighting."  (D's 56.1, ¶ 40)

Christopher Williams and David Rivera then "ran" to David Rivera's residence, which was close by, to call the police again, and spent 5 minutes there.  (D's 56.1, ¶ 41)

When the "police picked up," Christopher Williams told the police that "a man is chasing [him] and saying that he has a gun," and "that there is a gun."  (D's 56.1, ¶ 42)

The NYPD SPRINT report evidencing the call to the 911 operator indicates that there was a male Hispanic with dark skin who had a gun.  (D's 56.1, ¶ 43)

The responding officers remember the job also "[coming] over as a dispute between landlord and tenant."  (D's 56.1, ¶ 44)

The police told Christopher Williams that they would "send an officer right over." (D's 56.1, ¶ 45)

Police Officer Christopher Romano and his partner, P.O. Gillio Costanzo, arrived at the scene 5 minutes later.  (D's 56.1, ¶ 46)

The officers talked to Lorena White, Nicole Sabella and Lorena White's boyfriend after they arrived on the scene for "fifteen to twenty minutes."  (D's 56.1, ¶ 47)

The officers also searched Lorena White's boyfriend's car for the gun.  (D's 56.1, ¶ 48)

Upon arriving at the scene, Officers Romano and Costanzo were told that two women had gotten into a physical altercation and P.O. Romano's investigation confirmed same. They were told about the physical altercation by one of the women participants.  They also observed physical injuries, including a "lip" injury to Lorena White and a scratch on Diana Williams' chin.  No gun was found.  (D's 56.1, ¶ 49)

Lorena White is able to speak English and P.O. Costanzo could communicate with her with the help of her boyfriend.  (D's 56.1, ¶ 50)

According to Christopher Williams, the situation was very "hectic" and "chaotic" when the police arrived.  (D's 56.1, ¶ 51)

Plaintiff was ultimately arrested for assaulting her tenant, Lorena White. (Assault in the 3rd Degree)  (D's 56.1, ¶ 52)

Lorena White was also ultimately arrested for assaulting plaintiff.  (D's 56.1, ¶ 53)

Upon her arrest, plaintiff was transported to the NYPD's 122nd Precinct for processing, which was a 3-5 minute ride from 265 Hillbrook Drive.  (D's 56.1, ¶ 54)

While in custody, and upon her arrival at Staten Island Central Booking, which is at the same location as the NYPD's 120th Precinct, following transport from the 122nd Precinct, plaintiff requested to go to the hospital.  (D's 56.1, ¶ 55)

In accordance with her request, plaintiff was transported to the Richmond University Medical Center by EMTs in an ambulance.  (D's 56.1, ¶ 56)

According to its records, the Richmond University Medical Center provided plaintiff an American Sign Language Interpreter when she was treated at that Hospital.  (the first time)  (D's 56.1, ¶ 57)

Following her discharge from the Richmond University Medical Center (the first time), plaintiff was transported back to Staten Island Central Booking by P.O. Justin Meehan and P.O. Christopher Maki.  (D's 56.1, ¶ 58)

Upon arriving back at Staten Island Central Booking, plaintiff again requested to be hospitalized.  (D's 56.1, ¶ 59)

In accordance with her request, plaintiff was again transported to the Richmond University Medical Center by EMTs in an ambulance. (D's 56.1, ¶ 60)

While she was treated at the Richmond University Medical Center (the second time), plaintiff contends that she was not provided an American Sign Language Interpreter, though the Hospital during its Rule 30(b)(6) deposition in this matter, testified that it could not determine from its records whether one was provided or not. (D's 56.1, ¶ 61)

Plaintiff has not sued the Richmond University Hospital for its alleged failure to provide an American Sign Language Interpreter during plaintiff's second visit to the Hospital. (D's 56.1, ¶ 62)

On September 12, 2011, plaintiff was released from custody without charges being formally brought at or about 1:00 or 2:00 p.m. as the Staten Island District Attorney chose not to proceed if both women agreed not to pursue charges against each other. (D's 56.1, ¶ 63)

Lorena White and Nicole Sabella ultimately moved out of 265 Hillbrook Drive on or about September 11, 2011. (D's 56.1, ¶ 64)

## SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995); Twin Laboratories, Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). However, to survive summary judgment, the non-moving party must produce evidence to support her case and "may not rely simply on conclusory statements or on contentions that the [admissible evidence] supporting the

motion [is] not credible." <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993).

Further, evidence that is "merely colorable or not significantly probative" is insufficient to defeat

a motion for summary judgment. <u>Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.</u>, 192

F.3d 337, 346 (2d Cir. 1999). "Rule 56(c) mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." <u>Celotex</u>, <u>supra</u>, at 322.

**ARGUMENT**

**POINT I**

**THE CITY IS NOT LIABLE FOR ALLEGED
DISCRIMINATION AT THE SCENE OF THE
ARREST**

Count I of plaintiff's Amended Complaint alleges discrimination by the City

based on its alleged failure to provide plaintiff "a reasonable accommodation." To establish a

violation under the Americans with Disabilities Act (the "ADA"), and Rehabilitation Act,

plaintiff "must demonstrate: 1) that she is a 'qualified individual' with a disability; 2) that

Defendant is subject to one of the Acts; and 3) that she was 'denied the opportunity to participate

in or benefit from Defendant's services, programs or activities, or was otherwise discriminated

against by Defendant by reason of her disability.'" <u>Powell v. Nat'l Board of Medical Examiners</u>,

364 F.3d 79, 85 (2d Cir. 2004). Although apparently a question of first impression in this

Circuit, courts in other Circuits have consistently excluded police officers' "on the street

interactions" with persons from coverage under the ADA and Rehabilitation Acts until such time

as the crime scene has been secured, arrest(s) have been effectuated and the arrestee(s) have been

transported to the stationhouse.[1]  For this reason alone, plaintiff's discrimination claims arising from events until such time that she arrived at the 122nd Precinct for processing should be dismissed.[2]

Courts have consistently denied coverage under the ADA and Rehabilitation Acts for such "on the street" police encounters under two theories.  Some courts have simply found that such street encounters are not covered "services, programs or activities" under the ADA and Rehabilitation Acts.  Rosen v. Montgomery County Maryland, 121 F.3d 154, 158 (4th Cir. 1997) (As to drunk driving arrest, "[i]f we are to assume,…, that the police were required to provide auxiliary aids at some point in the process, that point certainly cannot be placed before the arrival at the stationhouse.  The police do not have to get an interpreter before they can stop and shackle a fleeing bank robber, and they do not have to do so to stop a suspected drunk driver, conduct a field sobriety test, and make an arrest.);  Crocker v. Lewiston Police Dep't, 00-13-P-C, 2001 U.S. Dist. LEXIS 25872, at *4-6, 27-28 (D. Maine 2001) (Where police responded to 911 call complaining of domestic violence assault, where police officer made decision to arrest based on appearance of and "solely on information provided by" the complaining witness, the arrest is not a covered "service, program or activity'); Patrice v. Murphy, 43 F. Supp.2d 1156, 1160 (W.D. Wash. 1999) (No covered "service, program or activity" under Acts "[w]here underlying criminal activity has occurred, such as a bank robbery, drunken driving, or domestic violence, and the officers are engaged in an on-the-street response, investigation, and arrest, [for]

---

[1] This Court at a prior conference in this matter recognized the difficulty with this aspect of plaintiff's discrimination claim when it noted that it was "unrealistic" for defendant to provide an "effective way of communicating with plaintiff" at the scene of the arrest.  (Docket 50, 10/22/14 Tr., p. 21, ll. 21-25)

[2] Nor should the City be held responsible for any obligation to provide an interpreter while plaintiff was hospitalized, nor does plaintiff's Amended Complaint so allege.  This was an obligation that the Richmond University Medical Center undertook as it was treating her.  (see D's 56.1, ¶ 57)

forestalling all police activity until an interpreter can be located to aid communication with the deaf protagonist would be impractical and could jeopardize the police's ability to act in time to stop a fleeing suspect, physically control the situation, or interview witnesses on the scene. The decisions we ask our officers to make under already stressful, and sometimes dangerous, circumstances should not be subjected to second guessing by comparing their in-the-field actions to the requirements of the ADA.")

Other courts have used an "exigent circumstances" analysis in determining whether there has been a covered "government activity" and in denying coverage in this circumstance. Tucker v. Tennessee, 539 F.3d 526, 536 (6th Cir. 2008) ("Nothing about the…situation (arrests upon domestic disturbance call) suggests the police could have been prepared for the responses which were required of them, or that the circumstances permitted taking the time to obtain a sign language interpreter. Where, as it occurred in this case, officers are presented with exigent or unexpected circumstances, it would be unreasonable to require certain accommodations be made in light of the overriding public safety concerns."); Bircoll v. Miami-Dade County, 480 F.3d 1072, 1086 (11th Cir. 2007) (interpreter not required for DUI stop "given the exigent circumstances of a DUI stop on the side of a highway, the on-the-spot judgment required of the police, and the serious public safety concerns in DUI criminal activity.); Hainze v. Richards, 207 F.3d 795, 801-802 (5th Cir. 2000) ("Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life….To require officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an

unnecessary risk to innocents."); <u>Deleon v. City of Alvin Police Dep't</u>, H-09-1022, 2010 U.S.

Dist. LEXIS 126116, at *14-15 (S.D. Texas 2010) (Where police responded to call and victim

had knife wound, police had right to arrest and secure the scene, rather than call for a sign

language interpreter.); <u>McCray v. City of Dothan</u>, 169 F. Supp.2d 1260, 1275 (D. Ala. 2001)

(adopting foregoing rule set forth in <u>Hainze</u>, <u>supra</u>).

      Under either analysis, the Court should exclude the "on the street" police

encounter and this incident from coverage under the ADA and Rehabilitation Act until such time

as plaintiff reached the NYPD's 122nd Precinct for processing. It is simply not realistic to expect

police officers to call for a sign language interpreter when they are called to a scene for a

complaint of a man threatening person(s) with a gun and complaints of assaults with injuries.

(D's 56.1, ¶¶ 23-28, 37-40 and 48) The scene was also admittedly "chaotic." (D's 56.1, ¶ 51)

The police first had to first secure the scene and make sure that there was no gun, make sure that

the violence that had occurred would not continue and discontinue the "chaotic scene." It is

simply not realistic to expect consideration of ADA principles in connection with said activities,

as was found by the foregoing authorities. In any event, plaintiff was arrested based on the

complaint by Lorena White, (D's 56.1, ¶¶ 47, 49, 50 and 52) which the officers clearly had the

right to do. Thus, the presence of an interpreter would not have changed the fact of her arrest in

any case.

      The result is no different when analyzed under plaintiff's New York Human

Rights Law ("NYHRL") and New York City Human Rights Law ("NYCHRL") claims. Federal,

State and City disability counterparts have "typically been treated as co-extensive," <u>Loeffler v.

Staten Island University Hospital</u>, 582 F.3d 268, 278 (2d Cir. 2009), and the NYHRL and

NYCHRL have been found to be "subject to the ADA's analytical framework,…" <u>Missick v.</u>

City of New York, 707 F. Supp.2d 336, 336, 354 (E.D.N.Y. 2010).  Although the NYCHRL in some respects has been recently interpreted more liberally than its State and Federal counterparts, see generally Loeffler, supra, at 278, no reasonable interpretation of the NYCHRL by plaintiff would warrant a different outcome in this instance.

**POINT II**

**PLAINTIFF'S FALSE ARREST CLAIM MUST
BE DISMISSED**

Plaintiff has brought a state law false arrest claim against defendant City under the theory of *respondeat superior*.  (Amended Complaint, Count III)  Under New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotations and citations omitted).  Since a claim for false arrest is rooted in the Fourth and Fourteenth Amendments, it is substantially the same as a New York state law claim for false arrest.  Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003).

"The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest . . . .'"  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).  This is true "whether that action is brought under state law or under § 1983."  Id. (citing Broughton v. State of New York, 37 N.Y.2d 451, 458 (1975) (under New York law, "justification may be established by showing that the arrest was based on probable cause.")

Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Singer v. Fulton County Sheriff, 63

F.3d at 118 (citing <u>Hygh v. Jacobs</u>, 961 F.2d 359, 366 (2d Cir. 1992)); <u>Boyd v. City of New York</u>, 336 F.3d at 75. Probable cause requires only a probability, not an actual showing, of criminal activity. <u>Illinois v. Gates</u>, 462 U.S. 213, 244 n.13 (1983); <u>Ricciuti v. New York City Transit Auth.</u>, 124 F.3d 123, 128 (2d Cir. 1997); <u>Miloslavsky v. AES Eng'g Soc'y, Inc.</u>, 808 F. Supp. 351, 354 (S.D.N.Y. 1992), <u>aff'd</u>, 993 F.2d 1534 (2d Cir. 1993). Moreover, the validity of an arrest does not depend upon an ultimate finding of guilt or innocence. <u>Pierson v. Ray</u>, 386 U.S. 547, 555 (1967); <u>Weyant</u>, 101 F.3d at 852. "The District Attorney's failure to prosecute furnishes no support to plaintiff's claim of false arrest. The validity of an arrest does not depend on a finding of innocence or any other disposition." <u>Quinn v. City of New York</u>, No. 99-CV-7068 (JBW), 2003 U.S. Dist. LEXIS 3521, at *11-12 (E.D.N.Y. 2003).

In evaluating whether there was probable cause for an arrest, a court considers the facts available to the officer at the time of arrest. <u>Ricciuti v. New York City Transit Auth.</u>, 124 F.3d 123, 128 (2d Cir. 1997); <u>see also</u> <u>Beck v. Ohio</u>, 379 U.S. 89, 93 (1964) (existence of probable cause is measured as of the moment of arrest, not on later developments). Once a police officer has a reasonable basis to believe there is probable cause to arrest, the officer is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest. <u>Baker v. McCollan</u>, 443 U.S. 137, 145-46 (1979); <u>Panetta v. Crowley</u>, 460 F.3d 388, 395 (2d Cir. 2006) (quoting <u>Curley v. Vill. of Suffern</u>, 268 F.3d 65, 70 (2d Cir. 2001)). "Nor does it matter that an investigation might have cast doubt upon the basis for the arrest." <u>Panetta</u>, 460 F.3d at 396 (quoting <u>Curley</u>, 268 F.3d at 70).

"Probable cause will generally be found to exist when an officer is advised of a crime by a victim or an eyewitness." <u>Wahhab v. City of New York</u>, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005)). It is well settled that "information provided by an identified citizen accusing

another individual of a specific crime is legally sufficient to provide the police with probable cause to arrest." Medina v. City of New York, 102 A.D.3d 101 (1st Dept. 2012); Shapiro v. County of Nassau, 202 A.D.2d 358 (1st Dept. 1993); Iorio v. City of New York, 19 A.D.3d 452 (2d Dept. 2005), citing People v. Bero, 139 A.D.2d 581, 584 (1988); Catanzaro v. City of Middletown Police Department, 233 A.D.2d 415, 416 (2d Dept. 1996); People v. Martin, 221 A.D.2d 568 (2d Dept. 1995), app. den. 87 N.Y.2d 1021 (1995); Williams v. City of New York, 208 A.D.2d 919, 919-920 (2d Dept. 1994); People v. Burton, 194 A.D.2d 731, 732 (2d Dept. 1993).

An eyewitness-victim's identification can provide probable cause for the arrest of the perpetrator even though the reliability of the victim has not been established nor the information corroborated. People v. Gonzalez, 138 A.D.2d 622, 623 (2d Dept.1988). "The veracity of citizen complain[an]ts who are the victims of the very crime they report to the police is assumed." Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993). "The identified citizen informant who witnessed the crime is presumed to be reliable and her basis of knowledge was her observation of the crime she described . . . ." People v. Walker, 278 A.D.2d 852, 852 (4th Dep't 2000) (citations omitted); see also People v. Nichols, 156 A.D.2d 129 (1st Dep't 1989) (finding that "an accusation against a specific individual from an identified citizen is presumed reliable").

The arresting officer is "neither required nor allowed to sit as prosecutor, judge or jury." Smith v. City of New York, 388 F. Supp. 2d 179, 185 (S.D.N.Y. 2005) (quoting Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989)). Law enforcement officials "have no duty to investigate an exculpatory statement of the accused, and their refusal to do so does not defeat probable cause." Mistretta v. Prokesch, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998); see also Maliha

v. Faluotico, No. 07-1106-cv, 2008 U.S. App. LEXIS 13097, at *3-6 (2d Cir. 2008) (finding probable cause for plaintiff's arrest for assault and rejecting plaintiff's argument that officers should have investigated his claim of self-defense prior to his arrest).

"We do not impose a duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." Jocks v. Tavernier, 316 F.3d 128, 135-36 (2d Cir. 2003). "[T]he arresting officer does not have to prove plaintiff's version wrong before arresting him." Curley, 268 F.3d at 70. "[F]ailing to provide an arrestee with the opportunity to present his exculpatory evidence does not undermine a probable cause determination." Yan v. City of New York, No. 09-CV-1435 (CBA) (SMG), 2011 U.S. Dist. LEXIS 137549, at *29 (E.D.N.Y. Nov. 30, 2011), aff'd 2013 U.S. App. LEXIS 2250, 3 (2d Cir. Feb. 1, 2013).

Plaintiff was arrested for assault in the third degree under New York Penal Law §120. (D's 56.1, ¶ 52) As plaintiff was arrested based on the complaint by Lorena White of assault and the information provided by her, (D's 56.1, ¶¶ 47 and 49) her arrest falls squarely within the "complaining witness" rule set forth in the foregoing authorities. It is also worth noting that the officers' investigation at the scene uncovered physical injuries on both participants to the confrontation and plaintiff admitted in her 50-h and deposition in this case that there was a physical altercation. (D's 56.1, ¶¶ 23-28, 49) As such, there was clearly probable cause for plaintiff's arrest, which is a complete defense to her cause of action for state law false arrest. Her claim for state law false arrest must therefore be dismissed.

## POINT III

### PLAINTIFF'S ASSAULT AND BATTERY CLAIM MUST BE DISMISSED

Plaintiff has also brought a state law assault and battery claim against the Defendant City. (Amended Complaint, Count IV) "Officers executing a lawful arrest are privileged to commit any battery that is reasonably necessary to effect the arrest." Johnston v. Port Auth. of N.Y. & N.J., No. 09-CV-4432 (JG) (CLP), 2011 U.S. Dist. LEXIS 82815, at *35-36 (E.D.N.Y. July 28, 2011) (granting summary judgment to defendants against plaintiff's claim of assault).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937 (2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Count III of plaintiff's Amended Complaint fails to set forth any facts sufficient to support a claim of assault and battery under the foregoing legal standard. As such, this claim must be dismissed as well.

## POINT IV

### PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL HARM CLAIM MUST BE DISMISSED

Plaintiff has brought an intentional infliction of emotional harm claim. ("IIED"). (Amended Complaint, Count V) However, plaintiff's IIED claim fails, as well. Under New York Law, IIED constitutes: (1) extreme and outrageous conduct; (2) an intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal relationship between the conduct and the injury; and (4) severe emotional distress. Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993).

Plaintiff should not be permitted to advance an IIED claim -- which is a "disfavored claim[ ] in New York courts, and ha[s] a rigorous standard," Mesa v. City of New York, 09 Civ. 10464 (JPO), 2013 U.S. Dist. LEXIS 1097, at *97 (S.D.N.Y. Jan. 3, 2013). First, "in New York, 'intentional infliction of emotional distress is a theory of recovery that is to be

invoked only as a last resort,' when traditional tort remedies are unavailable." Moore v. The City of New York, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (citing EEOC v. Die Fliedermaus, L.L.C., 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999) (quoting McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 256 A.D.2d 269, 682 N.Y.S.2d 167, 169 (1st Dep't 1998)). "Accordingly, 'no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability.'" Moore v. The City of New York, 219 F. Supp. at 339 (quoting Hansel v. Sheridan, 991 F. Supp. 69, 75 (N.D.N.Y. 1998)). Although plaintiff's false arrest claim and, in part, her discrimination claim must fail for the reasons set forth above, they are the bases upon which plaintiff's theories of recovery rest, and under which her claims must thus be analyzed. An IIED claim is not the proper vehicle to analyze plaintiff's claims, and must therefore be dismissed for this reason alone.

Second, for plaintiff to prevail on such an IIED claim, she must prove that defendant's acts were "so outrageous in character and so extreme in degree, to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell v. NY Post Co., 81 N.Y.2d 115 (1993). None of the allegations in the complaint remotely approach satisfying this standard of extreme or outrageous conduct. As such, for this reason, plaintiff's IIED claim must be dismissed.

Third, plaintiff cannot establish any of the elements of an IIED claim either. For this reason as well, her IIED claim must be dismissed.

## POINT V

### PLAINTIFF'S NEGLIGENT HIRING CLAIMS MUST BE DISMISSED

Plaintiff has also made a claim of negligent hiring and retention against the City. (Amended Complaint, Count VI) Plaintiff's claim for negligent hiring and retention also fails as

a matter of law and must be dismissed. To state a claim for ordinary negligence under New York law, a plaintiff must plausibly allege three elements: "'(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir. 2000) (quoting Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333, 424 N.E.2d 531, 441 N.Y.S.2d 644 (1981)). To state a claim for negligent hiring and retention under New York law, a plaintiff must plausibly allege, in addition to the elements of standard negligence, that: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations and quotation marks omitted); ); see also Coffey v. City of New York, 49 A.D.3d 449, 450-451, 853 N.Y.S.2d 551, 552-553 (1st Dep't 2008) (granting defendants' motion for summary judgment where there was no evidence that the City knew of employee's propensity for drunk driving and noting that "[r]ecovery on a negligent hiring or retention theory requires a showing that the employer was on notice of the relevant tortious propensities of the wrongdoing employee").

Such a claim cannot be sustained, however, when the defendant acts within the scope of her employment. See e.g., Newton v. City of New York, 681 F. Supp. 2d 473, 494-95 (S.D.N.Y. 2010); Stokes v. City of New York, No. 05-CV-7 (JFB) (MDG), 2007 U.S. Dist. LEXIS 32787, at *53-54 (E.D.N.Y. May 3, 2007); Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276 (DLC), 2004 U.S. Dist. LEXIS 6606, *27-28 (S.D.N.Y. Apr. 15, 2004). As this District Court has noted, "[t]o maintain a claim against a municipal employer for 'negligent

hiring, training, and supervision' of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of employment when committing the tort." Cerbelli v. City of New York, No. 99-CV-6846 (ARR) (RML), 2008 U.S. Dist. LEXIS 109341, at *85 (E.D.N.Y. Sept. 8, 2008), *report* *accepted* *by*, 2008 U.S. Dist. LEXIS 77335, at *2-4 (E.D.N.Y. Sept. 30, 2008) (citations omitted).

Here, plaintiff cannot establish that the City had knowledge or "should have known" of any of the police officers' "propensity to commit the alleged conduct alleged in this case. Additionally, all of the acts performed were within the scope of the officers' employment. As such, this claim of plaintiff must be dismissed as well.

## POINT VI

## THE CITY IS PROTECTED BY STATE LAW IMMUNITY

"Government action, if discretionary, may not be a basis for liability,…" McLean v. City, 12 NY3d 194, 203 (2009). "(W)hen official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action." Mon v. City of New York, 78 N.Y.2d 309, 574 N.Y.S.2d 529, 531-32 (1991) (citations omitted). Inherent in granting a governmental entity or actor immunity for discretionary or quasi-judicial acts is the notion that the municipality, through its employees and officers, exercises discretion in compliance with its own rules, regulations, and policies. The courts have held that litigation may not be used as a means of second-guessing discretionary decisions of public officials. Mon; Haddock v. City of New York, 75 N.Y.2d 478, 484-85 (1990). Municipal immunity from suit arising from the exercise of discretion applies notwithstanding proof of negligence or even malfeasance on the part of the actor. Further, it is not consequential whether the municipal

officer's discretionary action is a failure to act (nonfeasance) or an affirmative act (misfeasance). See Kovit v. Hallums, 4 N.Y.3d 499 (2005), rev'g, 307 A.D.2d 336 (2nd Dep't 2003); Lazan v. County of Suffolk, 4 N.Y.3d 499 (2005), rev'g, 11 A.D.3d 589 (2nd Dep't 2004).

Here, the decision to arrest plaintiff, as well as the officers' other acts, was well within the their discretion and plaintiff's arrest was supported by probable cause. As such, the City is entitled to state law immunity for the officers' actions in this case.

## POINT VII

## MUNICIPAL LIABILITY DOES NOT LIE

The only theory of municipal liability that plaintiff has pled is at ¶ 34 of her Amended Complaint, wherein she claims, "[t]he actions described herein constitute not an isolated incident but rather part of a pattern or practice routinely followed as policy within the New York City Police Department, indicative of a custom to disregard the constitutional rights of persons who have hearing impairments.[3]

---

[3] In various recent correspondence to the court, plaintiff has alluded to a municipal liability theory based on the City's alleged failure to train. However, as plaintiff has failed to plead such a theory, and defendant did not have fair notice of same, plaintiff may not proceed thereon. Sforza v. City of New York, 07 Civ. 6122 (DLC), 2009 U.S. Dist. LEXIS 27358, at *57 (S.D.N.Y. Mar. 31, 2009); Rule 8(a)(2), Fed. R. Civ. Pro. In any event, plaintiff cannot survive summary judgment on such a theory. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). "To satisfy the statute, a municipality's failure to train its employees in a relevant sense must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. (internal citations omitted). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (internal citations omitted) In fact, the Second Circuit has stated that plaintiff must submit evidence that defendant knew to a "moral certainty" that it would confront a situation, that the situation presented the defendant with a difficult choice or there was a mishandling of the situation, "and that the wrong choice by the City would frequently cause the deprivation of plaintiff['s] rights." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007). Under Celotex, supra, as discovery is now complete, plaintiff is required to come forward with evidence of "deliberate indifference" and deficiencies in the City's training program that gave rise to the alleged constitutional violation. As plaintiff is unable to meet these stringent standards, even if the Court is to consider this unpled theory, it must be dismissed upon summary judgment in any event.

In order to hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must demonstrate that a policy or custom of the City of New York caused the deprivation of his/her federal or constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); Sarus v. Rotundo, 831 F.2d 397, 400 (2d Cir. 1987). Under § 1983, a municipality may not be held liable solely on the basis of *respondeat superior*. Monell, 436 U.S. at 694; Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991). Rather, plaintiff must demonstrate "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). In fact, the identified municipal policy or practice must be the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694. Because plaintiff claims that NYPD officers violated her rights pursuant to alleged municipal policy, a "rigorous standard[] of . . . causation must be applied" to avoid liability on the basis of *respondeat superior*. Bd. of the County Commissioners v. Brown, 520 U.S. 397, 405 (1997). Plaintiff cannot meet this standard under any theory.

It is well established that a single isolated incident alleged in a complaint, especially where the alleged incident involves only officials below the policymaking level, will not suffice to establish a municipal policy or custom. City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985); Ricciuti, 941 F.2d at 123. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible" Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (emphasis in original).

Moreover, conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a Monell claim, absent evidence to support

such an allegation.  Young v. County of Fulton, 160 F.3d 899, 903-04 (2d Cir. 1998) (affirming dismissal of plaintiff's Monell claim because "her allegations failed to establish that she suffered any deprivation of her rights by reason of an official policy, custom, or practice" of the municipal defendants); Smith v. Montefiore Med. Center-Health Servs. Div., 22 F. Supp. 2d 275, 283 (S.D.N.Y. 1998) (summary judgment for defendants on Monell claim because "bare allegations of . . . a policy or custom, without any supporting evidence, do not constitute . . . proof"); cf. Bruno v. City of New York, 89 Civ. 6661 (KMW), 1992 U.S. Dist. LEXIS 4921, at *6 (S.D.N.Y. Apr. 15, 1992) (plaintiff's conclusory allegation that "constitutional violations were pursuant to a custom, policy or practice of the City of New York Police Department" insufficient to state a Monell claim).

Even after the completion of discovery in this matter, plaintiff is unable to come forth with any evidence of a "pattern or practice" of unconstitutionality by the defendant City or causation.  As such, plaintiff's municipal liability claims against the City must be dismissed as well.

## CONCLUSION

For the foregoing reasons, plaintiff's amended complaint should be dismissed in its entirety, except for her disability discrimination claims while detained at the NYPD's 122nd Precinct and Staten Island Central Booking.

Dated:        New York, New York
              January 16, 2015

                        ZACHARY W. CARTER
                        Corporation Counsel of the
                          City of New York
                        Attorney for Defendant City
                        100 Church Street, Room 3-133b
                         New York, New York 10007
                        (212) 356-3519

By:        /s/
_____
MARK D. ZUCKERMAN
Senior Counsel