# Americans with Disabilities Act

**Title II Technical Assistance Manual 1994 Supplement**

The following pages contain material to be aded to the Americans with Disabilites Act Title II Technical Assistance Manual (Nov. 1993 edition.) These supplements are to be inserted, as appropriate, at the end of each chapter of the Manual.

**II-1.0000 COVERAGE.**

**II-1.3000 Relationship to title III.**

[Insert the following text at the end of ILLUSTRATION 2, p. 2.]

Similarly, if an existing building is owned by a private entity covered by title III and rented to a public entity covered by title II, the private landlord does not become subject to the public entity's title II program access requirement by virtue of the leasing relationship. The private landlord only has title III obligations. These extend to the commercial facility as a whole and to any places of public accommodation contained in the facility. The governmental entity is responsible for ensuring that the programs offered in its rented space meet the requirements of title II.

**II-3.0000 GENERAL REQUIREMENTS**

**II-3.3000 Equality in participation/benefits.**

[Insert the following text after ILLUSTRATION 5, p. 11.]

Finally, the ADA permits a public entity to offer benefits to individuals with disabilities, or a particular class of individuals with disabilities, that it does not offer to individuals without disabilities. This allows State and local governments to provide special benefits, beyond those required by the ADA, that are limited to individuals with disabilities or a particular class of individuals with disabilities, without thereby incurring additional obligations to persons without disabilities or to other classes of individuals with disabilities.

ILLUSTRATION 6: The ADA does not require a State government to continue providing medical support payments to dependent children with schizophrenia, if other dependent children without disabilities are also ineligible for continued coverage. This is true even if the State chooses to provide continued coverage to a particular class of children with disabilities (e.g., those with physical impairments, or those who have mental retardation).

**II-3.5300 Unnecessary inquiries.**

[Insert the following text at the end of this section, p. 14.]

ILLUSTRATION 2: An essential eligibility requirement for obtaining a license to practice medicine is the ability to practice medicine safely and competently. State Agency X requires applicants for licenses to practice medicine to disclose whether they have ever had any physical and mental disabilities. A much more rigorous investigation is undertaken of applicants answering in the affirmative than of others. This process violates title II because of the additional burdens placed on individuals with

disabilities, and because the disclosure requirement is not limited to conditions that *currently* impair one's ability to practice medicine.

**II-3.6000 Reasonable modifications.**

**II-3.6100 General.**

[Insert the following text after ILLUSTRATION 3, p. 15.]

ILLUSTRATION 4: C, a person with a disability, stops at a rest area on the highway. C requires assistance in order to use the toilet facilities and his only companion is a person of the opposite sex. Permitting a person of the opposite sex to assist C in a toilet room designated for one sex may be a required reasonable modification of policy.

ILLUSTRATION 5: S, an individual with an environmental illness, requests a public entity to adopt a policy prohibiting the use of perfume or other scented products by its employees who come into contact with the public. Such a requirement is not a "reasonable" modification of the public entity's personnel policy.

**II-5.0000 PROGRAM ACCESSIBILITY**

**II-5.1000 General.**

[Insert the following text before the question, "*Can back doors . . . ?*" p. 22.]

*Does the program accessibility requirement prevent a public entity from renting existing inaccessible space to a private entity*? Not necessarily. For example, if a State leases space to a public accommodation in a downtown office building in a purely commercial transaction, i.e., the private entity does not provide any services as part of a State program, the State may rent out inaccessible space without violating its program access requirement. The private entity, though, would be responsible for compliance with title III. On the other hand, if a State highway authority leases a facility in one of its highway rest areas to a privately owned restaurant, the public entity would be responsible for making the space accessible, because the restaurant is part of the State's program of providing services to the motoring public. The private entity operating the restaurant would have an independent obligation to meet the requirements of title III.

**II-5.2000 Methods for providing program accessibility.**

[Insert the following text after ILLUSTRATION 3, P. 23.]

ILLUSTRATION 4: A municipal performing arts center provides seating at two prices -- inexpensive balcony seats and more expensive orchestra seats. All of the accessible seating is located on the higher priced orchestra level. In lieu of providing accessible seating on the balcony level, the city must make a reasonable number of accessible orchestra-level seats available at the lower price of balcony seats.

**II-6.0000 NEW CONSTRUCTION AND ALTERATIONS**

**II-6.2000 Choice of design standard: UFAS or ADAAG.**

**II-6.2100 General.**

[Insert the following text at the end of this section, p. 26]

*What if neither ADAAG nor UFAS contain specific standards for a particular type of facility*? In such cases the technical requirements of the chosen standard should be applied to the extent possible. If no standard exists for particular features, those features need not comply with a particular design standard. However, the facility must still be designed and operated to meet other title II requirements, including program accessibility (see II-5.0000).

ILLUSTRATION 1: A public entity is designing and constructing a playground. Because there are no UFAS or ADAAG standards for playground equipment, the equipment need not comply with any specific design standard. The title II requirements for equal opportunity and program accessibility, however, may obligate the public entity to provide an accessible route to the playground, some accessible equipment, and an accessible surface for the playground.

ILLUSTRATION 2: A public entity is designing and constructing a new baseball stadium that will feature a photographers' moat running around the perimeter of the playing field. While there are no specific standards in either ADAAG or UFAS for either dugouts or photographer's moats, the chosen standard should be applied to the extent that it contains appropriate technical standards. For example, an accessible route must be provided and any ramps or changes in level must meet the chosen standard. The public entity may have additional obligations under other title II requirements.

**II-6.6000 Curb ramps.**

[Insert the following text at the end of this section.]

Resurfacing beyond normal maintenance is an alteration. Merely filling potholes is considered to be normal maintenance.

**II-7.0000 COMMUNICATIONS**

**II-7.1000 Equally effective communication.**

A. [Insert the following text after ILLUSTRATION 2, p. 38.]

ILLUSTRATION: S, who is blind, wants to use the laundry facilities in his State university dormitory. Displayed on the laundry machine controls are written instructions for operating the machines. The university could make the machines accessible to S by Brailling the instructions onto adhesive labels and placing the labels (or a Brailled template) on the machines. An alternative method of ensuring effective communication with S would be to arrange for a laundry room attendant to read the instructions printed on the machines to S. Any one particular method is not required, so long as effective communication is provided.

B. [Insert the following text after ILLUSTRATION 2, p. 39.]

ILLUSTRATION 3: A municipal police department encounters many situations where effective communication with members of the public who are deaf or hard of hearing is critical. Such situations include interviewing suspects prior to arrest (when an officer is attempting to establish probable cause); interrogating arrestees; and interviewing victims or critical witnesses. In these situations, appropriate qualified interpreters must be provided when necessary to ensure effective communication.

The obligation of public entities to provide necessary auxiliary aids and services is not limited to individuals with a direct interest in the proceedings or outcome. Courtroom spectators with disabilities are also participants in the court program and are entitled to such aids or services as will afford them an equal opportunity to follow the court proceedings.

ILLUSTRATION: B, an individual who is hard of hearing, wishes to observe proceedings in the county courthouse. Even though the county believes that B has no personal or direct involvement in the courtroom proceedings at issue, the county must provide effective communication, which in this case may involve the provision of an assistive listening device, unless it can demonstrate that undue financial and administrative burdens would result.

C. [Insert the following text at the end of the question, "*Must tax bills . . . ?*" p. 39.]

Brailled documents are not required if effective communication is provided by other means.

**II-7.1100 Primary consideration.**

[Insert the following text after the first paragraph of this section, p. 39.]

ILLUSTRATION: A county's Supervisor of Elections provides magnifying lenses and readers for individuals with vision impairments seeking to vote. The election procedures specify that an individual who requests assistance will be aided by two poll workers, or by one person selected by the voter. C, a voter who is blind, protests that this method does not allow a blind voter to cast a secret ballot, and requests that the County provide him with a Brailled ballot. A Brailled ballot, however, would have to be counted separately and would be readily identifiable, and thus would not resolve the problem of ballot secrecy. Because County X can demonstrate that its current system of providing assistance is an effective means of affording an individual with a disability an equal opportunity to vote, the County need not provide ballots in Braille.

**II-7.3000 Emergency telephone services.**

**II-7.3300 Seven-digit lines.**

[Insert the following text at the end of this section, p. 42.]

ILLUSTRATION: Some States may operate a statewide 911 system for both voice and nonvoice calls and, in addition, permit voice callers only to dial seven-digit numbers to obtain assistance from particular emergency service providers. Such an arrangement does not violate title II so long as nonvoice callers whose calls are directed through 911 receive emergency attention as quickly as voice callers who dial local emergency seven-digit numbers for assistance.

**II-9.0000 INVESTIGATION OF COMPLAINTS AND ENFORCEMENT**

**II-9.2000 Complaints**.

[Insert the following text at the end of this section, p. 51.]

*Is a private plaintiff entitled to compensatory damages?* A private plaintiff under title II is entitled to all of the remedies available under section 504 of the Rehabilitation Act of 1973, including compensatory damages.

ILLUSTRATION: A county court system is found by a Federal court to have violated title II of the ADA by excluding a blind individual from a jury because of his blindness. The individual is entitled to compensatory damages for any injuries suffered, including compensation, when appropriate, for any emotional distress caused by the discrimination.