UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIANA WILLIAMS,

Plaintiff,

-against-

THE CITY OF NEW YORK,

Defendant.

**DEFENDANT'S MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for the City of New York*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Mark D. Zuckerman*
*Tel: (212) 356-3519*
*Matter #: 2012-038983*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT

      POINT I

            THE CITY IS NOT LIABLE AT THE SCENE OF
            THE ARREST FOR DISCRIMINATION UNDER
            THE ADA AND REHABILITATION ACTS ........................................... 1

      POINT II

            THE CITY IS NOT LIABLE AT THE SCENE OF
            THE ARREST FOR DISCRIMINATION UNDER
            THE NYCHRL ........................................................................................ 6

      POINT III

            THE CITY IS NOT LIABLE FOR FALSE
            ARREST ................................................................................................... 7

      POINT IV

            PLAINTIFF'S ASSAULT AND BATTERY
            CLAIM SHOULD BE DISMISSED ......................................................... 9

      POINT V

            STATE LAW IMMUNITIES SHOULD BE
            AFFORDED TO THE CITY ...................................................................... 9

      POINT VI

            PLAINTIFF'S CLAIMS FOR MUNICIPAL
            LIABILITY MUST BE DISMISSED ..................................................... 10

CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**     **Pages**

Amnesty America v. Town of West Hartford,
    361 F.3d 113 (2d Cir. 2004).......................................................................... 12

Arias v. City of New York,
    22 A.D.3d 436 (2nd Dep't 2005) ................................................................... 9

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2008).................................................................................. 9

Bahl v. County of Ramsey,
    695 F.3d 778 (8th Cir. 2012) ........................................................................ 2

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)...................................................................................... 9

Bircoll v. Miami-Dade County,
    480 F.3d 1072 (11th Cir. 2007) .................................................................... 2

Center of City of West Corrollton,
    227 F. Supp. 2d 863 (S.D. Ohio 2002) ....................................................... 3

Curley v. Village of Suffern,
    268 F.3d 65 (2d Cir. 2001)........................................................................... 7

Febres v. City of New York,
    238 F.R.D. 377 (S.D.N.Y. 2006) ................................................................ 5

Hainze v. Richards,
    207 F.3d 795 (5th Cir. 2000) .................................................................... 2, 5

Jocks v. Tavernier,
    316 F.3d 128 (2d Cir. 2003)......................................................................... 7

Oliveira v. Mayer,
    23 F.3d 642 (2d Cir. 1994)........................................................................... 7

Pennsylvania Department of Corr. v. Yeskey,
    524 U.S. 206 (1998)...................................................................................... 2

Powell v. Nat'l Board of Medical Examiners,
    364 F.3d 79 (2d Cir. 2004)........................................................................... 6

Reynolds v. Giuliani,
    506 F.3d 183 (2d Cir. 2007)....................................................................... 12

**Cases**                                                                       **Pages**

Rosen v. Montgomery County Maryland,
    121 F.3d 154 (4th Cir. 1997) ................................................................... 2

Salinas v. City of New Braunfels,
    557 F. Supp. 2d 771 (W.D. Texas 2006) ............................................... 3

Semereth v. Board of Cnty. Comm'rs of Frederick Country,
    673 F.3d 333 (4th Cir. 2012) ............................................................. 2, 4

Taylor v. City of Mason,
    970 F. Supp. 2d 772 (S.D. Ohio 2013) ................................................. 3

Vippolis v. Vill. of Haverstraw,
    768 F.2d 40 (2d Cir. 1985).................................................................. 11

Waller v. City of Danville,
    556 F.3d 171 (4th Cir. 2009) ............................................................... 5

**Statutes**

42 USC §1983 ..................................................................................................... 7

N.Y.C. Admin. Code §8-107(4)(a) ..................................................................... 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

DIANA WILLIAMS,

**DEFENDANT'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff,

-against-

THE CITY OF NEW YORK,

12 CV 6805 (VEC)

Defendant.

-------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

Defendant City of New York hereby respectfully submits its Memorandum of Law in further support of its motion for partial summary judgment. For the reasons set forth herein, as well as defendant's moving papers, defendant respectfully submits that its motion should be granted in its entirety.

## ARGUMENT

### POINT I

### THE CITY IS NOT LIABLE AT THE SCENE OF THE ARREST FOR DISCRIMINATION UNDER THE ADA AND REHABILITATION ACTS

In her responsive Memorandum of Law at page 5, plaintiff concedes that the issue of whether the "on the street" police interaction that occurred at 265 Hillbrook Drive, Staten Island, New York, on September 11, 2011, is excluded from coverage under the Americans with Disabilities Act (the "ADA") and Rehabilitation Act, or to what extent, is a question of first impression in this Circuit. However, at pages 9-11 of its opening brief, defendant cited eight (8) cases from courts throughout the country supporting its argument, whether because those courts have simply not included such police interactions in the requirements of said Acts, (or excluded such interactions from coverage) or because "exigent circumstances" were found such that there

was no coverage under said Acts either.  The decisions cited by defendant include cases from four Circuit Courts of Appeals, the 4th, 5th, 6th and 11th Circuits.

Plaintiff makes a number of arguments as to why this Court should reject the decisions cited by defendant in its opening brief.  First, plaintiff cites to the United States Supreme Court's decision in Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998), and argues that a number of the decisions cited by defendant in its opening brief did not consider that decision.  However, Yeskey only examined the question of whether a Pennsylvania prisoner who suffered from hypertension was eligible for a boot camp program.  It did not address the question presented upon this motion and in the eight cases cited by defendant in its opening brief, namely the applicability of the ADA and Rehabilitation Acts to "on the street" police encounters.  Although plaintiff takes the position that the cases cited by defendants require a different analysis in light of Yeskey, seven (7) of the cases cited by defendant in its opening brief are post-Yeskey.  The only such case that pre-dates Yeskey, is Rosen v. Montgomery County Maryland, 121 F.3d 154, 158 (4th Cir. 1997).  So, obviously, Yeskey was considered by the seven (7) other courts, and yet did not mandate the outcome that plaintiff would urge upon this Court.

Next, plaintiff cites Bahl v. County of Ramsey, 695 F.3d 778 (8th Cir. 2012), in support of her argument.  However, Bahl actually supports defendant's position, and approvingly cites to Bircoll v. Miami-Dade County, 480 F.3d 1072, 1086 (11th Cir. 2007) and Hainze v. Richards, 207 F.3d 795, 801-802 (5th Cir. 2000), cited by defendant, in concluding that, "in these circumstances (a traffic stop), it would be unreasonable to require that certain accommodations be made in light of overriding public safety concerns."  Id. at 785-786.  So, plaintiff's reliance on Bahl is misplaced.

Plaintiff then cites Semereth v. Board of Cnty. Comm'rs of Frederick Country, 673 F.3d 333 (4th Cir. 2012), in support of its position.  Although it used a somewhat different analysis,

that Court held that given the "exigent circumstances" of the domestic violence call to which the police officers responded in that case, it would not require any additional accommodations beyond what the officers provided, and stated, "in the criminal procedure context, we are reluctant to question the snap judgments of law enforcement officials in situations in which a reasonable officer would fear for his safety and the safety of those he is charged to protect." Id. at 340.

Plaintiff extensively discusses the next case that she cites, Taylor v. City of Mason, 970 F. Supp. 2d 772 (S.D. Ohio 2013). However, the court's decision in Taylor was upon a motion to dismiss, not a motion for summary judgment, as is at issue here, and was based in part on the need for further factual development. Id. at 782. Further, there are significant factual distinctions between this case and Taylor. First, the police call initiated by the Williams' did not report that plaintiff was assaulted by Lorena White, as is what occurred in Taylor as to an alleged assault by that plaintiff's babysitter. Second, the complaint made to the police here is that there was a man with a gun, creating a much stronger argument for "exigent circumstances." (D's 56.1 at ¶¶ 42-43) Third, the police in this case did not use Lorena White to interpret for plaintiff, as occurred in Taylor as to the plaintiff and her babysitter. In fact, to the extent that plaintiff's husband played any interpreting role in Williams, it was a role that he had played when he and plaintiff worked together at the United States Postal Service. (See D's Response to P's Additional Facts, ¶ 39) Fourth, there were physical injuries here that were documented by the responding police officers at the scene of the incident and shortly thereafter. (D's 56.1 at ¶¶ 27, 49) Thus, defendant respectfully submits that Taylor should not be dispositive of this issue.

Likewise, Salinas v. City of New Braunfels, 557 F. Supp. 2d 771 (W.D. Texas 2006), cited on page 6 of plaintiff's brief, is of limited precedential value. Salinas did not even involve a situation where the plaintiff was arrested in that case, much less complaints and documentation

of physical injuries due to assaults and the existence of a gun in the complaint made to the police that gave rise to the police response. The same applies to <u>Center of City of West Corrollton</u>, 227 F. Supp. 2d 863 (S.D. Ohio 2002), also cited by plaintiff at page 6 of her brief. The remainder of the cases cited by plaintiff in support of her argument were actually cited by defendant in support of its argument in its opening brief and warrant no further discussion here.

The United States of America (the "USA") argues throughout its Statement of Interest in support of plaintiff that this issue should be analyzed solely as one as whether a "reasonable accommodation" was provided, citing <u>Semereth</u>, <u>supra</u>. However, <u>Semereth</u> appears to be the only case to resort to the "reasonable accommodation" analysis with respect to this issue, and, as seen, was actually decided in the favor of the responding police officers and municipality in that case. So, the USA's reliance on <u>Semereth</u> in an attempt to frame this issue as solely one of "reasonable accommodation" is not correct or the prevailing view.

The USA's argument in support of plaintiff that this is an issue of construction of its regulations is erroneous, as it has pointed to no DOJ regulation directly on point as to the issue being litigated upon this motion, nor any violation by defendant of any such regulation.

The USA also argues at page 7 of its Statement of Interest that the referenced DOJ Tool Kit as it relates to the NYPD having a contract in place for arrested hearing impaired persons to receive interpretation services bears on this issue. However, there is no dispute that the NYPD did and does have contracts in place to provide interpreting services to hearing impaired persons on an as needed basis. (See D's Response to P's Additional Facts, ¶ 105) Further, said DOJ Tool Kit is certainly not dispositive of the statutory construction issue presented here, nor are any of the other of DOJ's materials annexed to the USA's Statement of Interest in support of plaintiff's partial summary judgment opposition.

The USA also makes reference to the NYPD's Interim Order 31 on pp. 8-9 of its Statement of Interest.  (See also D's Response to P's Additional Facts, ¶ 109)  While Interim Order 31 does support the proposition that the NYPD did and does have a strong policy in place as to interactions with hearing impaired persons that neither plaintiff nor the USA has even argued is deficient such that a municipal liability claim or ADA claim lies based thereon, said Interim Order does not address the statutory construction issue being litigated here.  Further, an internal NYPD patrol guide provision, which essentially is what Interim Order 31 became and was, is not determinative of liability in this instance, see e.g., Febres v. City of New York, 238 F.R.D. 377, 389 (S.D.N.Y. 2006), and neither plaintiff nor the USA has even argued with legal authority that it is.

In support of plaintiff's opposition argument, the USA then extensively references the Settlement Agreement it entered into with the NYPD in 2009.  (Statement of Interest at pp. 7-9)  However, this document provides no support for plaintiff's argument for a number of reasons.  First, plaintiff makes no allegation of a private right of action thereunder, and the Court at a prior court conference in this case on May 6, 2014 questioned whether plaintiff would have any such private right of action even if one had been asserted in her Complaint or otherwise.  Second, the referenced Settlement Agreement is not a court endorsed consent decree or the like, but rather a settlement of claims that were disputed by the NYPD, based on the very terms and language contained therein.  Third, neither the Settlement Agreement nor its attachments address the precise statutory issue being litigated in this case.  Fourth, the Settlement Agreement is not determinative of ADA liability and no support has been provided in support of any such argument.  Thus, the "smoke and mirror" argument regarding the referenced Settlement Agreement by both plaintiff and the USA should be rejected.

The USA also cites <u>Waller v. City of Danville</u>, 556 F.3d 171 (4th Cir. 2009), involving a hostage situation, in support of plaintiff's argument. However, the Fourth Circuit cites from the specific portion of <u>Hainze</u> which is cited by defendant throughout the summary judgment briefing regarding Title II's lack of applicability to "on the street responses to disturbances." <u>Id</u>. at 174-175. The <u>Waller</u> court also specifically stated that exigencies are not limited to "split second circumstances," <u>id</u>., and that there was no reasonable accommodation violation in that case. So, <u>Waller</u> certainly does not add to plaintiff's argument.

Defendant also notes that the USA's reference to its 2006 Guidance § III; ADA Law Enforcement Guide at page 20 of its Statement of Interest regarding exigent circumstances actually supports defendant's argument, not plaintiff's.

As such, defendant respectfully submits that based on the authorities set forth in its opening brief, and the discussion herein, that plaintiff's claims for relief under the ADA and Rehabilitation Acts at the scene of the "on the street" police encounter at 265 Hillbrook Drive on September 11, 2011, be dismissed upon defendant's motion for partial summary judgment, or at the very least a finding that no sign language interpreter was required to be called thereat.

## POINT II

### THE CITY IS NOT LIABLE AT THE SCENE OF THE ARREST FOR DISCRIMINATION UNDER THE NYCHRL

Plaintiff argues that the New York City Human Rights Law ("NYCHRL") mandates an outcome in her favor on the question of coverage for the "on the street" police encounter at issue here, even should the Court find in defendant's favor on her ADA and Rehabilitation Act claims on this issue.[1] Although defendant acknowledges that an analysis under the NYCHRL may be more liberally construed in a disabled person's favor in certain instances, plaintiff's argument at

---

[1] Plaintiff does not appear to argue that her claims under the New York Human Rights Law should be analyzed any differently than her claims under the ADA and Rehabilitation Acts.

pp. 11-13 of her brief is extremely misleading, erroneous and provides no authority whatsoever for a different outcome under the NYCHRL on the question presented here.

The reason that plaintiff's argument is so erroneous is that she cites authority construing the NYCHRL as it relates to the construction of a "reasonable accommodation." As seen, at issue upon this motion is not the construction of a "reasonable accommodation" under the ADA and Rehabilitation Acts, but rather a determination of whether there was a covered "service, program or activity." Powell v. Nat'l Board of Medical Examiners, 364 F.3d 79, 85 (2d Cir. 2004). It appears to defendant that the NYCHRL counterpart to covered "services, programs or activities" is the NYCHRL language "accommodations, advantages, facilities or privileges," that is set forth in N.Y.C. Admin. Code §8-107(4)(a). Plaintiff has provided no argument or authority whatsoever supporting the premise that there should be a different outcome than under the ADA, Rehabilitation Act or New York Human Rights Law under said analogous NYCHRL provision. As such, the NYCHRL should not change the outcome mandated by its Federal and State counterparts.

## POINT III

### THE CITY IS NOT LIABLE FOR FALSE ARREST

At pages 13-16 of its opening brief, the City set forth its argument in support of dismissal of plaintiff's state law false arrest claim.[2] In accordance with all of the authorities set forth therein, defendant principally relies on the "complaining witness" rule. Plaintiff does not dispute that such a rule exists, nor refutes or distinguishes any of the many authorities that defendant cites. Rather, plaintiff cites just one case on the "complaining witness" rule, a federal §1983 case from 21 years ago, Oliveira v. Mayer, 23 F.3d 642 (2d Cir. 1994). Plaintiff's citation to

---

[2] As plaintiff has not named any individual police officer as a defendant, plaintiff has no federal false arrest claim either.

Oliveira significantly adds the word "only" (see plaintiff's Memorandum of Law at p. 15) to the proposition cited to, a word that is not in the Second Circuit's opinion.

In fact, the Second Circuit has since stated, "we do not impose a duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." Jocks v. Tavernier, 316 F.3d 128, 135-36 (2d Cir. 2003). "[T]he arresting officer does not have to prove plaintiff's version wrong before arresting him." Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001).

In any case, the arrest of plaintiff was reliable and corroborated. Plaintiff first argues that it is a disputed issue of fact as to whether she suffered any injuries in an altercation with Lorena White, and that the scratch on her face was inflicted by her dog. (Plaintiff's Memorandum of Law at pp. 15-16) But, the officers' investigation at the scene uncovered physical injuries on both participants to the confrontation, which was documented by photographs, and plaintiff admitted in her 50-h and deposition in this case that there was a physical altercation. (D's 56.1, ¶¶ 23-28, 49) In fact, plaintiff admitted during her 50-h deposition that she "got a scratch on her chin" from Lorena White, (D's 56.1, ¶ 27), and not from her dog, an explanation that is nothing but a belated and convenient attempt to avoid summary judgment in defendant's favor by improperly using an affidavit. (See D's Response to P's Additional Facts, ¶ 21) Plaintiff also admitted in her 50-h and deposition in this action to making physical contact with Lorena White. (D's 56.1, ¶ 25). Thus, plaintiff's attempt to manufacture a question of fact as to the propriety of her arrest should be rejected.

Plaintiff secondly argues that the officers' investigation should be called into question because she questions Lorena White's ability to communicate. First, plaintiff provides no authority for the proposition that interviewing Lorena White's boyfriend and roommate, Nicole

Sabella, (D's 56.1, ¶ 47), was improper, or that these persons couldn't interpret for her, if necessary. Plaintiff has not even documented any inability of Lorena White to communicate by admissible and competent evidence upon defendant's motion for summary judgment. (See D's Response to P's Additional Facts, ¶ 7) Further, plaintiff's husband, who lived with Lorena White as her landlord and roommate for a considerable period of time, testified at deposition that Lorena White could speak English and had "good English skills and very strong grammar foundation." (D's 56.1, ¶ 50) So, calling into question the responding officers' investigation on this basis is unavailing to defeat summary judgment.

## PLAINTIFF'S ASSAULT AND BATTERY CLAIM SHOULD BE DISMISSED

Plaintiff attempts to avoid the dismissal of her assault and battery claims by pointing to her uncorroborated deposition testimony about being shoved into a wall by an unidentified police officer and to which she has never documented any injury. (Plaintiff's Memorandum of Law at p. 16) However, this theory of assault and battery was never pled, as was argued in defendant's opening brief, an argument to which plaintiff never responded. Simply, "a complaint must contain sufficient factual matter,…to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937 (2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As plaintiff did not meet this requirement, plaintiff should not now be allowed to proceed on an uncorroborated and undocumented assault and battery theory.

## POINT IV

## STATE LAW IMMUNITIES SHOULD BE AFFORDED TO THE CITY

Defendant set forth the applicable law as it relates to applicable state law immunities at p. 20 of its opening brief. Plaintiff makes two separate arguments in opposing the applicability of the state law immunities to which defendant is entitled. First, plaintiff argues that state law

immunities only "come into play" when the City's officials exercise discretion or expert judgment in strictly policy decisions. But that is not true. E.g. Arias v. City of New York, 22 A.D.3d 436 (2nd Dep't 2005) (plaintiff was killed while attempting to sell firearms to an undercover police officer that sparked a gunfight; summary judgment was granted to the City on immunity grounds because the officers exercised their professional judgment, which was not inconsistent with acceptable police practice).

Second, plaintiff argues that the City had a "special duty" owed to plaintiff because she is deaf. However, plaintiff fails to understand defendant's argument. The City is arguing the applicability of state law immunities only as to plaintiff's state law claims. Thus, arguing a "special duty" by virtue of federal statutes does not refute the claims of plaintiff to which the immunities argument was intended, namely false arrest and assault and battery.

## POINT V

### PLAINTIFF'S CLAIMS FOR MUNICIPAL LIABILITY MUST BE DISMISSED

Defendant's arguments as to why municipal liability doesn't lie in this case are set forth at pages 21-23 of its opening brief. In response, first, plaintiff argues that the City may be liable under the ADA and Rehabilitation Act under a theory of *respondeat superior*. The City has never argued that the City could never be liable for certain violations of the ADA or Rehabilitation Act. So, this argument of plaintiff does not in any way address the arguments that the City does make in support of summary judgment.

Second, plaintiff seems to argue that the City maintains unconstitutional official policies, although she never addresses or criticizes (nor does the USA) the official policy that the City did have entitled "Interaction with the Hearing Impaired" that was in effect at the time of plaintiff's arrest. (See D's Response to P's Additional Facts, ¶ 109) Plaintiff points to two such alleged unconstitutional polices. Plaintiff first vaguely claims that Police Assistant Commissioner of

Training Roberson "admitted that the NYPD has a rubber-stamp procedure for deeming interpreters qualified, and that she had never seen provision of auxiliary aides recorded." (Plaintiff's Memorandum of Law a pp. 20-21)  This theory of municipal liability should be rejected for any number of reasons.  First, such a theory was never pled and it is not even clear exactly to which policy plaintiff alludes.  In any event, as was argued by the City at Docket 64 regarding the admissibility of the Dr. Poor expert report, this issue is the ultimate "red herring." There is no dispute that plaintiff was not provided an American Sign Language Interpreter except at the hospital, so the quality of any interaction if one had been provided is not at issue here and did not cause any of plaintiff's alleged injuries.  Again, what this case is about is what, and if any, accommodations had to be provided to plaintiff, not the quality of sign language linguists that the NYPD maintains on its staff.  Additionally, plaintiff conveniently ignores the fact that in addition to the sign language linguists that the NYPD maintains on its staff, the NYPD maintains contract services with outside vendors to provide qualified sign language interpreters as needed. (See D's Response to P's Additional Facts, ¶ 105)  Thus, plaintiff's belated theory should be rejected.

The second "policy" that plaintiff now challenges is a purported policy of the NYPD to handcuff all deaf arrestees behind their backs at all times.  This theory was not pled either, and should be rejected on this basis alone.  It is simply not fair to raise an unpled municipal liability theory for the first time in response to a motion for summary judgment when there was no notice of same given, nor development of the policy considerations at issue in discovery or even real discovery on same other than a random question at a deposition.  (or for the USA to infuse this issue into the litigation when plaintiff never pled it)  Further, plaintiff has not provided any support for her allegation that being handcuffed behind her back during a portion of her detention was unconstitutional or that any such policy in general would be unconstitutional.

Both would be required to maintain such a claim, even if well pled. "The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries . . . . Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted). As such, this theory cannot be the basis of liability either.

Plaintiff seems to also be making some vague allegation of municipal liability based on the settlement agreement entered into between the United States and NYPD in November, 2009. (Ex. B to Andrew Rozynski Declaration). First, the settlement agreement is not a consent decree nor was court endorsed in any way and provides plaintiff with no private right of action based thereon. She was not even a party to it. Second, the Settlement agreement specifically states that there was no admission of liability of any kind on behalf of NYPD, that the claims of the USA were disputed and there was no finding of any wrongdoing by the NYPD. Third, plaintiff's allegation on page 21 of her brief that the NYPD's "procedures and training have not changed since this agreement" is baseless and was not even litigated in this case, and has no bearing on plaintiff's claims. Simply, plaintiff's use of this document is yet but another "red herring" that has no bearing on liability in this case.

Finally, plaintiff makes a failure to train argument. The argument must fail for at least three reasons. First, such a theory was never pled. Plaintiff admits that all that was pled was a "pattern and practice" theory, which would be a separate basis for municipal liability. Second, neither plaintiff, nor the USA, has identified a specific deficiency in defendant's training program, under the case that plaintiff cites, Amnesty America v. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004). In fact, neither plaintiff, nor the USA, has even addressed or criticized the training that the NYPD has. (See D's Response to P's Additional Facts, ¶ 109)

Third, plaintiff cannot establish "deliberate indifference," as neither the above referenced settlement agreement nor any other evidence provided by plaintiff or the USA can establish "to a moral certainty" that a situation such as plaintiff's would be mishandled.  Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).  In fact, although in its Statement of Interest, the USA states that the Settlement Agreement was the result of its investigation following multiple complaints against NYPD, the USA neither at the time of its investigation specified any such specific complaints to NYPD beyond one incident, or any such incidents herein, in support of a "deliberate indifference" argument on plaintiff's behalf.  Thus, any such deliberate indifference argument should therefore be rejected.

## CONCLUSION

For the reasons set forth in defendant's moving papers, as well as herein, defendant's motion for partial summary judgment should be granted in its entirety.

Dated:        New York, New York
              March 17, 2015

                        ZACHARY W. CARTER
                        Corporation Counsel of the
                         City of New York
                        Attorney for Defendant City
                        100 Church Street, Room 3-133b
                         New York, New York 10007
                        (212) 356--3519


                        By: _____/s/_____
                           MARK D. ZUCKERMAN
                           Senior Counsel