E56QdwilC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DIANA WILLIAMS

           Plaintiff

     v.                   12 CV 6805 (VEC)

THE CITY OF NEW YORK

           Defendant

------------------------------x

                            New York, N.Y.
                            May 6, 2014
                            10:00 a.m.

Before:

             HON. VALERIE E. CAPRONI

                       District Judge

                APPEARANCES

EISENBERG & BAUM
    Attorney for Plaintiff
ANDREW ROZYNSKI

NEW YORK CITY LAW DEPARTMENT
OFFICE OF CORPORATION COUNSEL
    Attorney for Defendant
CAMIEL S. RICHARDS

1             (In open court)
2             THE COURT:  Good morning.
3             MR. ZUCKERMAN:  Good morning, your Honor.
4             MR. ROZYNSKI:  Good morning, your Honor.
5             THE COURT:  Who is who?
6             MR. ROZYNSKI:  Andrew Rozynski for the plaintiff,
7    Diane Williams.
8             MR. ZUCKERMAN:  Mark Zuckerman for City of New York.
9             THE COURT:  So where are we with this case?
10            MR. ROZYNSKI:  Right now we are in discovery.  We have
11   had several changes of attorneys with defendant.  We just got a
12   new attorney on the case, so we are just trying to get up to
13   speed and conduct a couple of depositions to finish everything
14   out and gain additional discovery before the end discovery date
15   and try to be diligent for the discovery date.  Hopefully, we
16   can get everything together before then.
17            THE COURT:  I hope so too.  Anything to add to the
18   merry-go-round at corporate counsel's office?
19            MR. ZUCKERMAN:  Two prior attorneys on the case have
20   left the law department, so it hasn't been an internal thing.
21   It is that attorneys have moved out of state, quite frankly.
22            THE COURT:  I have according to my records your fact
23   discovery cut-off is July 3rd is there any reason why you can't
24   make that date?
25            MR. ROZYNSKI:  As long as we can get all the

1  depositions scheduled before then, I don't see any reason why
2  we wouldn't be able to do that.
3         THE COURT:  Who needs to be deposed?
4         MR. ROZYNSKI:  There are several officers that
5  currently are unidentified, which I am trying to get the
6  identification of those officers through discovery.  I would
7  really like to depose some of those people.
8         Also, I want the person most knowledgeable on their
9  policy that was created as a result of a Department of Justice
10 settlement agreement mandating that they provide all these
11 accommodations to deaf people who are arrested, things of that
12 sort.
13        So a few officers and persons with knowledge as to
14 that issue are the people I'm most interested in.
15        THE COURT:  I presume that that settlement agreement
16 doesn't create any kind of private right of action.
17        MR. ROZYNSKI:  It doesn't create a private right of
18 action, but the New York City did agree to follow a bunch of
19 policies and procedures, and they didn't, which is kind of
20 indicative of deliberate indifference for my client; that they
21 were on notice they had to provide these accommodations.  They
22 had all these procedures that they were supposed to follow.
23 They didn't follow most of them and, therefore, there's a more
24 serious violation that we probably will want discovery on that
25 issue.

1    THE COURT: What's the City's position?

2    MR. ZUCKERMAN: Well, I mean, I think that the
3 Americans With Disabilities Act governs one way or the other.
4 I don't think that the settlement agreement with DOJ rates
5 private right of action. Certain patrol guide provisions were
6 instituted after that agreement. I don't think that they
7 create a right of action either, but basically, I think at the
8 end of the day a reasonableness standard applies, and I think
9 that at the end of the day what we did here was reasonable as
10 to the accommodation part of this case. There is also a
11 Section 1983 claim as well, I believe.

12    THE COURT: I actually thought it was a definite 1983
13 case. So there's also an ADA claim?

14    MR. ROZYNSKI: Yes, ADA claim, Rehab Act claim. I
15 think that is the meat and the majority of the case because as
16 a result of a lack of reasonable accommodations in this case,
17 some very serious things happened to my client. I think that
18 is the true focus of the case.

19    Yes, there is a false arrest and a 1983 claim, but I
20 think that the majority of the claims would be ADA and Rehab
21 Act claim in this case.

22    THE COURT: Do you have enough facts to really
23 proceed? I don't have an opinion of this one way or the other,
24 but if you're ADA and Rehab Act Claim -- and from what I
25 understand, this was a failure to provide a sign language

1  interpreter for a deaf defendant -- that strikes me as kind of
2  a different issue than claiming that the officers individually
3  engaged in constitutional misconduct by a false arrest.
4      MR. ROZYNSKI:  Yes.  I think it is all part and
5  parcel, because the fact that they couldn't communicate with
6  her led to a wrongful arrest in our position.  It's all
7  intertwined.  So that's why it's an important part of the case.
8      THE COURT:  But wasn't there a complaint?  Didn't the
9  police department have a complaint from a tenant?
10     MR. ROZYNSKI:  Well, the thing is that there was a
11 phone call.  We don't know which phone call the police
12 department responded to, but my client called because that was
13 the day that their tenant was leaving the house and they wanted
14 to make sure it was a peaceful, you know, leaving, so --
15     THE COURT:  Departure.
16     MR. ROZYNSKI:  Yes, a departure.  So they called the
17 police department to make sure that they could come and observe
18 and supervise.  Then later on there was a call from somebody, I
19 believe a tenant or a tenant's friend, who made allegations
20 that there was something going wrong there.
21     However, my client couldn't communicate with the
22 police officer and the other tenant could, and there was an
23 argument over whether it was a probable cause to arrest or not,
24 but they didn't communicate with her at all.  They didn't get
25 her side at all.  And they say that they didn't need to

1  investigate her facts.  They had enough to go on, but that's
2  all in dispute.
3          THE COURT:  Where is the City going to go with this
4  case?
5          MR. ZUCKERMAN:  Well, we'd love to try to resolve it,
6  but --
7          THE COURT:  You're way far apart.
8          MR. ZUCKERMAN:  Yes, that's the problem.  So, Judge,
9  I've settled an Americans with Disabilities Act, false arrest,
10 a case involving a hearing-impaired defendant before Judge
11 Francis just two weeks ago.  He's the assigned magistrate, and
12 he's very good.  He's very familiar with this exact type of
13 case.  It's very similar.  So I'm sure you know Bruce Gitlin.
14 It was a case against Bruce Gitlin who brings these type of
15 cases as well, and Judge Francis was great in resolving it.  I
16 would love to go before Judge Francis for a settlement
17 conference, but I don't think your Honor would be inclined to
18 waste his time, and I don't think I would be inclined to ask
19 you to refer it for settlement if we're just going to waste his
20 time.
21         I strongly suggest both parties go before Judge
22 Francis with an open mind and to listen to him because he is
23 very good.  I've settled not only that case, I've settled a
24 bunch of cases.  He's very, very good.  But if we're both going
25 to go in there and I'm locked to my position and Mr. Rozynski

is locked to his position without listening and appreciating where he's coming from with his wealth of experience, then it's not fruitful. So if Mr. Rozynski is willing to go before Judge Francis and to allow him to do his good work, then I am more than amenable to ask your Honor for a referral for settlement conference.

If that doesn't work, there's been a Southern District mediation. There's been a Rule 68 offer of judgment. I have nowhere to go with it except to prepare for trial after motion for summary judgment.

THE COURT: Yes. I'm not sure that this is going to be a summary judgment case. Again, I'm not prejudging anything, but just listening to the parties, my sense is that you are going to end up in -- maybe not on everything. You may be able to get rid of the individual officers on the Bivens claim.

MR. ZUCKERMAN: The 1983.

THE COURT: That's right, 1983 claims.

MR. ROZYNSKI: To that point, these are reasonable accommodation cases, there are extensive Second Circuit and Southern District case law that says whether the accommodation for that was reasonable or not reasonable is usually a question of fact, and it's very hard to get out on summary judgment on these types of cases.

THE COURT: Well, frankly, you've got a profoundly

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

|   |   |
|---|---|
| 1 | deaf person sitting in jail without the police being able to |
| 2 | communicate.  That's not a good fact pattern for the corp. |
| 3 | counsel, I would say. |
| 4 | MR. ROZYNSKI:  I mean, she was forcibly injected by |
| 5 | needle against her will, not knowing what was going on, and not |
| 6 | knowing why she was arrested, what for, for about 24 hours. |
| 7 | Then all of a sudden she gets into court and is released, not |
| 8 | knowing what happened to her, and now she has severe |
| 9 | psychological issues that are going on as a result of this, and |
| 10 | her dynamics with her family and her friends has changed.  It's |
| 11 | a real serious situation, but anyway -- |
| 12 | THE COURT:  The bottom line is this seems like a case |
| 13 | that perhaps could be settled.  It's a little distressing that |
| 14 | the mediation program didn't get you any closer to each other |
| 15 | in terms of the value of the case.  I am happy to work with the |
| 16 | parties to talk about settlement as well.  This is going to be |
| 17 | a jury trial, I presume. |
| 18 | MR. ROZYNSKI:  Yes. |
| 19 | THE COURT:  That said, you are way far apart. Unless |
| 20 | you want a referral to the magistrate judge, I'm not going to |
| 21 | give you one because I don't want to waste the magistrate |
| 22 | judge's time.  They've got a lot of other things to do.  All of |
| 23 | that said, you've got a looming fact discovery deadline coming |
| 24 | up.  So what's your pleasure? |
| 25 | MR. ROZYNSKI:  Yes, last time we went to the |

1   mediation, it was -- I mean, the mediator was extremely good,
2   but the corporation counsel that came in stated to the mediator
3   that she only had the authority up to $15,000 at that time and
4   couldn't get any more authority, and, therefore, it was kind
5   of -- I mean, not a waste of everyone's time but there was
6   nowhere to go because that's all she had.
7             THE COURT:  But now you have an offer of judgment of
8   $50,000, so you're substantially higher than 15.
9             MR. ROZYNSKI:  We're higher now, but it's still not
10  the area we want to be.  If counsel could represent that they
11  could have someone with any amount of authority on the phone
12  and that they could get that authority and not just be coming
13  in with a very limited number and that's it.
14            THE COURT:  Right.
15            MR. ROZYNSKI:  Maybe it would be more productive.
16            THE COURT:  Can we go off the record?
17            (Off the record)
18            THE COURT:  I think having talked to the corporation
19  counsel, I think there may be some utility of a referral.
20            I will do a magistrate judge referral, but I am also
21  going to keep the deadline for fact discovery as is.  So we'll
22  do the referral.  Hopefully, the case can be settled.  If not,
23  please proceed with discovery.
24            What I would like to do is have another status
25  conference at the close of fact discovery to see where you are,

1    see whether the City still thinks you're going to be making a
2    motion for summary judgment or what.
3            If you settle in front of the magistrate, send us a
4    letter letting us know.  If you don't settle, send us a letter
5    letting us know what the status of the case is.  Status
6    conference will be on July 11 at 10:00 a.m.
7            Does that work for you, Mr. Rozynski?
8            MR. ROZYNSKI:  That should be good.
9            THE COURT:  Thank you.  Anything else?
10           MR. ZUCKERMAN:  Thank you, your Honor.
11           (Adjourned)