EISENBERG & BAUM, LLP
24 Union Square East
Fourth Floor
New York, NY 10003
(212) 353-8700

ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------

| | |
|---|---|
| DIANA WILLIAMS, | CIV. NO. 12-CV-06805(VEC) |
| Plaintiff, | |
| v. | |
| THE CITY OF NEW YORK, | **PLAINTIFF'S SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER OF APRIL 15, 2015** |
| Defendant. | |

-----------------------------------------------------------

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

   1.   The Remedial Scheme of Title II of the ADA Does Not Preclude an Action Under 42 U.S.C. § 1983. ............................................................................................................. 1

   2.   The Court Has Subject-Matter Jurisdiction over Plaintiff's State Law Claims. ................... 7

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) .................................................................. 8, 9

*Barnes v. Fischer*, No. 9:13-CV-164 (GLS/RFT) (N.D.N.Y. Sept. 22, 2014) ............................ 10

*Bernardine v City of New York*, 294 N.Y. 361 (1945) ............................................................ 10

*Brown v. Research Foundation of SUNY*, 08 Civ. 592 (TJM), 2009 U.S. Dist. LEXIS 45971 (N.D.N.Y. May 28, 2009) ................................................................................................ 5

*Bryant v. New York State Dept. of Correction Services*, 146 F. Supp. 2d 422 (S.D.N.Y. 2001) ... 9

*Calkins v. Blum*, 511 F. Supp. 1073 (N.D.N.Y. 1981) ............................................................ 10

*Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358 (2d Cir. 2000) .................................................... 9

*E.C. ex. rel. R.C. v. County of Suffolk*, 882 F. Supp. 2d 323 (E.D.N.Y. 2012) ............................ 5

*Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581 (S.D.N.Y. 2014) ...................................... 5

*Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009) ..................................... passim

*Garcia v. SUNY Health Sciences Center*, 280 F.3d 98 (2d Cir. 2001) ........................................ 2

*Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002) ........................................................................... 1

*Gross v. State*, No. 5:08-CV-00527 (NPM/GHL) (N.D.N.Y. March 31, 2009) ............................ 9

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003) ..................................................... 2, 3

*Hildebrand v. Allegheny County*, 757 F.3d 99 (3d Cir. 2014) .................................................. 5

*Huff v. West Haven Bd. of Educ.*, 10 F. Supp. 2d 117 (D. Conn. 1998) .................................... 10

*Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992) ........................................................................ 11

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) ................................................... 9

*In re World Trade Center Disaster Site Litigation*, 521 F.3d 169 (2d Cir. 2008) ........................ 9

*Jenkins v. City of N.Y.*, 478 F.3d 76 (2d Cir. 2007) ................................................................ 11

*Jinks v. Richland County*, 538 U.S. 456 (2003) .................................................................................. 8

*Jocks v. Tavernier,* 316 F.3d 128 (2d Cir. 2003) ............................................................................ 11

*King v. Cuomo*, No. 08 Civ. 6058 (SHS) (S.D.N.Y. Jan. 4 2011) .................................................... 9

*Lener v. Hempstead Public Schools*, 12 Civ. 3340 (JFB)(SIL), 2014 U.S. Dist. LEXIS 133773

    (E.D.N.Y. Sept. 23, 2014) ....................................................................................................... 5

*Levin v. Madigan*, 692 F.3d 607 (7th Cir. 2012) ............................................................................ 6

*Lubecki v. City of New York*, 304 A.D.2d 224, 758 N.Y.S.2d 610 (2003) ................................... 11

*M.H. v. Mount Vernon City Sch. District*, 13 Civ. 3596 (VB), 2014 U.S. Dist. LEXIS 32640

    (S.D.N.Y. Mar. 3, 2014) .......................................................................................................... 5

*McGibney v. Connetquot Central School District*, 14 Civ. 1591 (ADS)(GRB), 2015 U.S. Dist.

    LEXIS 14580 (E.D.N.Y. Feb. 6, 2015) ................................................................................... 5

*Middlesex County Sewerage Authority v. National Sea Clammers Assn.*, 453 U.S. 1 (1981) ........ 4

*Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ................................................................................. 8

*Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978) ........................................ 10

*Murphy v. Zoning Com'n of Town of New Milford*, 223 F. Supp. 2d 377 (D. Conn. 2002) ......... 10

*Pape v. Bd. of Educ. of the Wappingers Central Sch. District*, 07 Civ. 8828 (KMK), 2009 U.S.

    Dist. LEXIS 91738 (S.D.N.Y. Sept. 28, 2009) ....................................................................... 5

*Patterson v. County of Oneida, NY*, 375 F.3d 206 (2d. Cir. 2004) ................................................. 5

*Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) .................................................................. 4

*Sankar v. City of New York*, 867 F. Supp. 2d 297 (E.D.N.Y. 2012) ............................................ 11

*Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134 (2d Cir. 1993) ......................................... 5

*Smith v. Robinson*, 468 U.S. 992 (1984) ................................................................................. 2, 4, 6

*Stahura-Uhl v. Iroquois Central School District*, No. 09-CV-784S (W.D.N.Y. Dec. 15, 2011) ... 7

*Tango v. Tulevech*, 61 N.Y.2d 34 (N.Y. Ct. App. 1983) .................................................................. 11

*Trotman v. Palisades Interstate Park Com'n*, 557 F. 2d 35 (2d Cir. 1977) ................................... 9

*Tsesarskaya v. City of New York,* 843 F. Supp. 2d 446 (S.D.N.Y. 2012)..................................... 11

*Williams v. City of White Plains*, 718 F. Supp. 2d 374 (S.D.N.Y. 2010) ...................................... 11

**Statutes**

20 U.S.C. § 1681(a) ........................................................................................................................ 1

28 U.S.C. § 1367............................................................................................................................. 8

29 U.S.C. § 794a...................................................................................................................... passim

42 U.S.C. § 12133................................................................................................................... passim

42 U.S.C. § 1983..................................................................................................................... passim

42 U.S.C. § 2000d........................................................................................................................... 2

New York Court of Claims Act § 8 ........................................................................................ passim

## INTRODUCTION

On April 15, 2015, this Court requested additional briefing on the following two topics: 1. Given *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009), whether the remedial scheme of Title II of the ADA precludes an action under 42 U.S.C. § 1983 to vindicate a right secured by the ADA; and 2. Whether federal courts have subject matter jurisdiction over Counts III and IV pursuant to the New York Court of Claims Act § 8. Pursuant to the authority set forth below, Plaintiff in this matter argues that the answer to the first question is no, and the answer to the second question is yes.

## ARGUMENT

**1. The Remedial Scheme of Title II of the ADA Does Not Preclude an Action Under 42 U.S.C. § 1983.**

42 U.S.C. § 1983 provides a procedural mechanism by which a plaintiff can bring suit to enforce rights secured elsewhere, either in the laws or the Constitution of the United States. *See Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002). In *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009), the United States Supreme Court held that Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), did not preclude an action under 42 U.S.C. § 1983 to vindicate gender discrimination. Justice Alito, writing for a unanimous Court, observed: "If Congress intended a statute's remedial scheme to be the exclusive avenue through which a plaintiff may assert the claim . . . the § 1983 claims are precluded. . . . In determining whether a subsequent statute precludes the enforcement of a federal right under § 1983, we have placed primary emphasis on the nature and extent of that statute's remedial scheme." *Id.* at 794 (internal quotations and formatting omitted). The idea is that allowing a plaintiff to circumvent the remedial scheme of

certain statutes by means of a direct § 1983 suit would be inconsistent with Congress' intent if the remedial scheme of the other statute is carefully tailored. *Id.* at 795 (citing *Smith v. Robinson*, 468 U.S. 992, 1012 (1984)). The question presented for this brief is thus whether the remedial scheme of Title II of the ADA is "sufficiently comprehensive" such as to indicate that Congress affirmatively intended that a § 1983 cause of action could not coexist with a Title II claim.

The answer is no. "Title II simply incorporates the remedial scheme of the Rehabilitation Act of 1973, see 29 U.S.C. § 794a(a)(2) (incorporated into Title II by 42 U.S.C. § 12133), which in turn incorporates the remedial scheme of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq." *Garcia v. SUNY Health Sciences Center*, 280 F.3d 98, 111 (2d Cir. 2001); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 285 (2d Cir. 2003) ("the ADA is designed to mirror the remedial scheme of the Rehabilitation Act . . . the Rehabilitation Act does not directly describe any features of the means by which it is enforced; it does cross-reference, however, the judicially-implied private right of action under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d."). Note that Title II of the ADA incorporates the remedial scheme of Title VI of the Civil Rights Act, while Title I of the ADA incorporates the remedial scheme of the more commonly discussed Title VII of the Civil Rights Act.[1] Title VII requires a plaintiff to file with the EEOC first, whereas Title VI does not. *See* 42 U.S.C. §§ 2000d and 2000e. It is therefore extremely important to distinguish between the different titles of the ADA for this analysis, and not to analyze "the ADA" wholesale.

In *Fitzgerald*, the United States Supreme Court came to the conclusion "that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a

---

[1] For the sake of brevity, from this point forward, "Title I" refers to Title I of the ADA; "Title II" refers to Title II of the ADA; "Title VI" refers to Title VI of the Civil Rights Act of 1964; "Title VII" refers to Title VII of the Civil Rights Act of 1964; and "Title IX" refers to Title IX of the Education Amendments of 1972.

substitute for § 1983 suits as a means of enforcing constitutional rights," in part because "Congress modeled Title IX after Title VI of the Civil Rights Act of 1964," which does not have a comprehensive enforcement scheme. *Id.* at 797. Since Title II is likewise modeled on Title VI and incorporates its remedial scheme, the logic follows directly from *Fitzgerald* that it too does not preclude a simultaneous § 1983 action.

Indeed, the Second Circuit Court of Appeals addressed a substantially similar question in *Henrietta D.*, in which it considered whether the remedial scheme of Title II precluded relief under the *Ex parte Young* doctrine. *Henrietta D.*, 331 F.3d at 289. Holding it did not, the court stated:

> Neither § 504 nor Title II displays any intent by Congress to bar a suit against state officials in their official capacities for injunctive relief, nor does either create a remedial scheme so elaborate that it could be thought to preclude relief under *Ex parte Young*. . . . Indeed, the United States correctly points out in its amicus brief that in enacting § 504 and Title II, Congress did not limit the availability of equitable remedies, but rather, expressly incorporated the remedies of Title VI of the Civil Rights Act of 1964, which include a judicially recognized implied private right of action. See 42 U.S.C. § 12133; 29 U.S.C. § 794a. . . . We thus agree with the plaintiffs, the United States, and our fellow Courts of Appeals that there is no basis for holding that the ADA or Rehabilitation Act intended to create the kind of comprehensive enforcement scheme that would preclude prospective injunctive relief against a state official in her official capacity.

*Id.* Having thus looked into the remedial scheme of Title II, the Second Circuit Court of Appeals did not consider it to be elaborate or comprehensive such that it would take away other avenues for relief such as *Ex parte Young*.

In *Fitzgerald*, the United State Supreme Court revisited the three prior cases in which it held that four statutes had "sufficiently comprehensive" remedial schemes so as to preclude a § 1983 suit. None of those statutes are civil rights statutes, and all have far more extensive remedial schemes than Title II.

3

In *Middlesex County Sewerage Authority v. National Sea Clammers Assn.*, 453 U.S. 1, 13-14 (1981), the Federal Water Pollution Control Act of 1972 and the Marine Protection, Research, and Sanctuaries Act of 1972 were held to preclude a § 1983 suit because their enforcement provisions were "unusually elaborate." *Id.* In addition to conferring great authority and enforcement options to the EPA Administrator and allowing review of the Administrator's actions by any interested party, the statutes also authorized citizen suits, but required prospective plaintiffs to comply with certain specified procedures before bringing suit. *Id.* Accordingly, the Court held that Congress had expressly "foreclosed" a § 1983 remedy under those Acts. *Id.* at 19. The distinction to be drawn is that Title II does not have any procedural requirements that plaintiffs must fulfill before filing suit, like the statutes in *Sea Clammers*. *See* 42 U.S.C. § 12133. Indeed, plaintiffs can bring claims under Title II directly to federal court, meaning that the concern of a plaintiff doing an end-around of the remedial scheme through § 1983 simply does not apply.

In *Smith v. Robinson*, 468 U.S. 992 (1984), the question was whether the Education of the Handicapped Act (now the Individuals with Disabilities Education Act, or IDEA) had a remedial scheme that foreclosed a § 1983 remedy. The Court held that it did, because the statute set forth "an elaborate procedural mechanism to protect the rights of handicapped children. The procedures not only ensure that hearings conducted by the State are fair and adequate. They also effect Congress' intent that each child's individual educational needs be worked out through a process that begins on the local level and includes ongoing parental involvement, detailed procedural safeguards, and a right to judicial review." *Id.* at 1010-11. Again, Title II has no such procedures, and allows suit to be brought directly in federal court.

In *Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005), the Supreme Court held that the Telecommunications Act of 1996 (TCA) precludes a § 1983 claim because it "adds no remedies

4

to those available under § 1983, and limits relief in ways that § 1983 does not." *Id.* at 122-23. Specifically, the TCA has a shorter time in which to file, and does not conclusively provide for certain forms of relief such as compensatory damages and attorneys' fees. *Id.* The concern was that a § 1983 suit would significantly expand on the relief that Congress intended to be available under the TCA. *See id.* By contrast, Title II does not limit relief to something less than § 1983 can provide, as the two statutes provide for the same available remedies.

Importantly, Title II does not borrow the remedial scheme of Title VII; it borrows the remedial scheme of Title VI, which does not have the administrative exhaustion requirement that Title VII has. Consequently, cases analyzing Title VII miss the mark. *See, e.g.*, *Patterson v. County of Oneida, NY*, 375 F.3d 206, 225 (2d. Cir. 2004). Similarly, cases that analyze "the ADA" wholesale, without considering that Titles I and II have different remedial schemes, do not undertake the analysis required by *Fitzgerald*, and also miss the mark.[2] In contrast to Title VII, Title VI contains no administrative requirement such that allowing a § 1983 claim would allow a plaintiff "to gain perceived advantages not available." *See Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 143 (2d Cir 1993). On a related note, there is currently a Circuit split with respect to whether the Age Discrimination in Employment Act (ADEA) forecloses a § 1983 claim. *C.f., e.g., Hildebrand v. Allegheny County*, 757 F.3d 99 (3d Cir. 2014) (it does); *Levin v. Madigan*,

---

[2] *E.g. Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014); *E.C. ex. rel. R.C. v. County of Suffolk*, 882 F. Supp. 2d 323, 355 (E.D.N.Y. 2012); *M.H. v. Mount Vernon City Sch. District*, 13 Civ. 3596 (VB), 2014 U.S. Dist. LEXIS 32640, at *25, n. 8 (S.D.N.Y. Mar. 3, 2014); *Pape v. Bd. of Educ. of the Wappingers Central Sch. District*, 07 Civ. 8828 (KMK), 2009 U.S. Dist. LEXIS 91738, at *20 (S.D.N.Y. Sept. 28, 2009); *McGibney v. Connetquot Central School District*, 14 Civ. 1591 (ADS)(GRB), 2015 U.S. Dist. LEXIS 14580, at *29 (E.D.N.Y. Feb. 6, 2015); *Lener v. Hempstead Public Schools*, 12 Civ. 3340 (JFB)(SIL), 2014 U.S. Dist. LEXIS 133773, at *30 (E.D.N.Y. Sept. 23, 2014); *Brown v. Research Foundation of SUNY*, 08 Civ. 592 (TJM), 2009 U.S. Dist. LEXIS 45971, at *34 (N.D.N.Y. May 28, 2009).

692 F.3d 607 (7th Cir. 2012) (it does not). But the ADEA uses the Title VII remedial structure, not the Title VI structure. *Levin*, 692 F.3d at 615.

The common thread, then, is that it is the existence of some administrative prerequisite that forecloses § 1983 as a vehicle by which to bring suit. If the plaintiff's claims deal purely with rights conferred by statute, and not constitutional rights, the plaintiff cannot use § 1983 to get around the administrative requirements of a statute, or to obtain relief that is above and beyond that authorized by the statute.

Title II does not raise this concern. Because Title II contains no procedural requirements above and beyond § 1983, and because the two statutes offer the same relief, there is no concern that a plaintiff could do an end-around of Title II by means of a § 1983 suit, and thereby thwart the remedial scheme of Title II. Illustratively, the plaintiff in *Smith*, 468 U.S. 992, also brought a claim under § 504 of the Rehabilitation Act. Analyzing whether the EHA claim also precluded a claim under § 504, the United States Supreme Court stated: "The significant difference between the two . . . is that the substantive and procedural rights assumed to be guaranteed by both statutes are specifically required only by the EHA." *Id.* at 1018. The Court held that "whatever remedy might be provided under § 504 is provided with more clarity and precision under the EHA," and that therefore "a plaintiff may not circumvent or enlarge on the remedies available under the EHA by resort to § 504." *Id.* at 1021. The Court thus stated outright that the remedial scheme of § 504 (which, as discussed earlier, is by reference the same as that of Title II) does not contain the comprehensive procedural requirements that would preclude a § 1983 suit.

In essence, by *Smith*'s logic, a § 504 claim thus seems to be on the same footing as a § 1983 claim in terms of its remedial comprehensiveness. A court in this Circuit, citing *Fitzgerald*, has already taken this logic from *Smith* and concluded as much:

6

Therefore, because the remedial scheme under Title IX and Title VI are nearly identical and because the Supreme Court has instructed that a Title IX claim can be vindicated under § 1983, this Court has no trouble concluding that the same analysis applies to Title VI, and by extension the Rehabilitation Act. Applying that analysis leads to the inevitable conclusion that the Rehabilitation Act scheme is not "comprehensive" and does not preclude a parallel § 1983 claim.

*Stahura-Uhl v. Iroquois Central School District*, No. 09-CV-784S (W.D.N.Y. Dec. 15, 2011) (citing *Fitzgerald*). As expounded upon earlier, Title II incorporates by reference the remedial schemes of § 504 and Title VI. Consequently, it would be consistent with *Fitzgerald* to hold that Title II of the ADA does not have a remedial scheme that forecloses simultaneous enforcement of civil rights through § 1983.[3]

### 2. The Court Has Subject-Matter Jurisdiction over Plaintiff's State Law Claims.

The second question posed by the Court is whether the Court has subject-matter jurisdiction over Plaintiff's claims arising under the laws of the State of New York, in light of New York's waiver of immunity in New York Court of Claims Act § 8 (hereinafter "§ 8").[4] The answer is yes, because § 8 addresses state immunity, not federal court jurisdiction over claims against municipalities.

---

[3] Moreover, Plaintiff's § 1983 claim in the present case does not merely assert a "right secured by the ADA." It also asserts a right to be free from unreasonable search and seizure under the Fourth Amendment, which the ADA does not protect. See Amended Complaint, Dkt. No. 14, Count I. Because the claim is therefore "based on a distinct violation of a constitutional right," dismissing it as precluded by the ADA would be improper. *See Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir. 1994).

[4] Section 8. "Waiver of immunity from liability. The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article. Nothing herein contained shall be construed to affect, alter or repeal any provision of the workmen's compensation law."

7

Subject-matter jurisdiction is governed not by any state law, but by superseding federal law; specifically, 28 U.S.C. § 1367. This provision reads: "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." Note that this rule, by its terms, establishes that exceptions to jurisdiction must be pursuant to other federal statutes, not state laws. Consequently, the United States Supreme Court has found that "under 28 U.S.C. § 1367, federal courts may exercise supplemental jurisdiction over state-law claims linked to a claim based on federal law." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 504 (2006). A federal court thus has subject-matter jurisdiction for all claims, both federal and state, that arise from a common nucleus of facts, as long as the plaintiff brings any claim under federal law. *See Jinks v. Richland County*, 538 U.S. 456, 463 (2003); *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Therefore, this Court has subject-matter jurisdiction over this case, as Plaintiff has brought claims establishing a federal question. An attendant issue, however, is whether, despite the Court's jurisdiction, the defendant is nonetheless somehow immune from suit. The two questions are different. If a party is immune, it does not mean that the court lacks jurisdiction; it merely means that there is no claim upon which relief can be granted. The United States Supreme Court has observed:

> On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous. . . . Judicial opinions, the Second Circuit incisively observed, "often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' . . . without explicitly considering whether the

8

dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." . . . We have described such unrefined dispositions as "drive-by jurisdictional rulings" that should be accorded "no precedential effect" on the question whether the federal court had authority to adjudicate the claim in suit.

*Arbaugh v. Y & H Corp.*, 546 US 500, 509 (2006) (citing *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000)). Immunity refers to immunity from *liability*, and thus does not have anything to do with *jurisdiction* per se. *See In re World Trade Center Disaster Site Litigation*, 521 F.3d 169, 187 (2d Cir. 2008). The United States Supreme Court has further stated:

> This point of commonality could suggest that the Eleventh Amendment, like the grant of Article III, § 2, jurisdiction, is cast in terms of reach or competence, so the federal courts are altogether disqualified from hearing certain suits brought against a State. This interpretation, however, has been neither our tradition nor the accepted construction of the Amendment's text. Rather, a State can waive its Eleventh Amendment protection and allow a federal court to hear and decide a case commenced or prosecuted against it. The Amendment, in other words, enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction. The immunity is one the States enjoy save where there has been a surrender of this immunity in the plan of the convention.

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997) (internal quotations and citations omitted). Accordingly, § 8, addressing immunity, is seemingly not relevant vis-à-vis this Court's subject-matter jurisdiction.

There is some authority indicating that the State of New York, through § 8, has not abrogated Eleventh Amendment immunity and consented to being sued in federal court, but only to being sued in the Court of Claims. *See generally, e.g.*, *Trotman v. Palisades Interstate Park Com'n*, 557 F. 2d 35 (2d Cir. 1977); *King v. Cuomo*, No. 08 Civ. 6058 (SHS) (S.D.N.Y. Jan. 4 2011); *Gross v. State*, No. 5:08-CV-00527 (NPM/GHL) (N.D.N.Y. March 31, 2009); *Bryant v. New York State Dept. of Correction Services*, 146 F. Supp. 2d 422 (S.D.N.Y. 2001). The Court need not consider this issue, though, because the present case is brought not against the State of

New York, but against the City of New York. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978), is therefore dispositive on this question. In *Monell*, the United States Supreme Court stated:

> There is certainly no constitutional impediment to municipal liability. The Tenth Amendment's reservation of nondelegated powers to the States is not implicated by a federal-court judgment enforcing the express prohibitions of unlawful state conduct enacted by the Fourteenth Amendment. . . . Nor is there any basis for concluding that the Eleventh Amendment is a bar to municipal liability. Our holding today is, of course, limited to local government units *which are not considered part of the State for Eleventh Amendment purposes*.

*Id.* at 690, 690 n.54 (emphasis added); *see also Barnes v. Fischer,* No. 9:13-CV-164 (GLS/RFT), at n.8 (N.D.N.Y. Sept. 22, 2014); *Murphy v. Zoning Com'n of Town of New Milford*, 223 F. Supp. 2d 377, 387 (D. Conn. 2002); *Huff v. West Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 121 (D. Conn. 1998); *Calkins v. Blum*, 511 F. Supp. 1073, 1099 (N.D.N.Y. 1981) (all citing *Monell* and holding that the Eleventh Amendment does not apply to municipalities). Accordingly, the Court need not consider whether the State explicitly waived all Eleventh Amendment immunity through § 8, because the City of New York is a local government unit that is not considered part of the State for Eleventh Amendment purposes, and enjoys no such immunity to begin with.

To the extent that common law sovereign immunity, as opposed to Eleventh Amendment immunity, is implicated at all with respect to the state law claims at issue, § 8 waives all forms of sovereign immunity afforded to both the state and all municipalities within the state. *Bernardine v City of New York*, 294 N.Y. 361 (1945), is instructive:

> The gist of this waiver and consent of the State has been operative since 1929, and is limited only by the incidental procedure prescribed in article II of the same Act. None of the civil divisions of the State — its counties, cities, towns and villages — has any independent sovereignty. . . . The legal irresponsibility heretofore enjoyed by these governmental units was nothing more than an extension of the exemption from liability which the State possessed. . . . On the waiver by the State of its own

> sovereign dispensation, that extension naturally was at an end and thus we were brought all the way round to a point where the civil divisions of the State are answerable equally with individuals and private corporations for wrongs of officers and employees, even if no separate statute sanctions that enlarged liability in a given instance.

*Id.* at 365-66; *see also Tango v. Tulevech*, 61 N.Y.2d 34 (N.Y. Ct. App. 1983) ("Municipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago.") (citing *Bernardine*).

Thus, the City of New York had no Eleventh Amendment immunity to begin with, and § 8 of the Court of Claims Act waives whatever common law sovereign immunity remained. Following all of this analysis, it becomes clear that the City can be held liable, and in federal court, for state law false arrest and/or battery (i.e., Counts III and IV of Plaintiff's Complaint). To hold that the City is somehow exempt from suit in federal court on state law false arrest and battery claims would run contrary to precedent in this Circuit. In *Sankar v. City of New York*, 867 F. Supp. 2d 297, 313 (E.D.N.Y. 2012), the court explained:

> Unlike claims brought pursuant to Section 1983, under New York state law, municipalities may be held vicariously liable for false arrest and malicious prosecution under a theory of respondeat superior. *Williams v. City of White Plains*, 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010) (Young, J.). This applies even to discretionary actions by police officers where, as here, genuine issues of material fact exist as to whether there was probable cause for arrest. *Lubecki v. City of New York*, 304 A.D.2d 224, 758 N.Y.S.2d 610, 617 (2003).

*See also, e.g.*, *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007); *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir. 2003); *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992); *Tsesarskaya v. City of New York,* 843 F. Supp. 2d 446, 454-55 (S.D.N.Y. 2012) (all explaining that state and federal law false arrest claims have the same standards, and addressing the merits against New York municipalities). Provisions from the Court of Claims Act have never been used to dispose of such

cases in the past, because § 8 does not declare that the federal courts lack *jurisdiction* over these claims, nor does it have the power to do so. Accordingly, the Court should find that it does have jurisdiction over Counts III and IV of Plaintiff's complaint.

## CONCLUSION

Pursuant to the authority set forth above, the Court should conclude that the remedial scheme of Title II of the ADA does not preclude an action under 42 U.S.C. § 1983 to vindicate a right secured by the ADA, and that the Court has subject matter jurisdiction over Counts III and IV.

Dated: New York, New York
May 6, 2015

Respectfully submitted,

EISENBERG & BAUM, LLP

By: *[signature]*
Andrew Rozynski, Esq.
Attorneys for Plaintiff